THE MERCHANTS' BANK OF CANADA, Respondent, *v.* ALFRED H. GRISWOLD, Appellant.

Defendant executed a power of attorney as follows: " I hereby authorize Horace Loveland, as my agent, to make drafts on me from time to time, as may be necessary for the purchase of lumber on my account, and to consign the same to the care of P. W. Scribner & Co." In an action upon a draft, drawn by Loveland in his own name and discounted by plaintiff upon the faith of and upon delivery of the instrument, *held,* that the authority given was absolute within the prescribed limits, and was equivalent to an unconditional promise to pay drafts so

drawn; that the words " as my agent " did not refer to the form of the draft but to the capacity in which Loveland acted, and if he drew the draft as agent, it was not material whether he described himself as such or not; that the words " as may be necessary for the purchase of lumber " did not constitute a condition precedent which plaintiff was required to show had been performed, but it was for the agent to determine the necessity; that the agent, by procuring the discount, represented that it was to be used in the business and that the amount was necessary, which representation bound the principal; also, that the requirement as to shipping the lumber was not a condition to the power to draw ; at least the presumption was that the agent observed these directions, and if defendant could avail himself of a neglect so to do, it was incumbent upon him to show it.

*Nixon* v. *Palmer* (4 Seld., 398); *Bank* v. *Gibson* (5 Duer, 524); *Schrippenrict* v. *Bayard* (1 Pet., 264) ; *Mulhall* v. *Keenan* (18 Wall., 342) distinguished.

Also, *held*, that the facts were sufficient to charge defendant as acceptor under the statute (1 R. S., 768, § 8).

Also *held*, that the declarations and representations of the agent at the time the draft was discounted, were part of the *res gestæ*, and so competent as evidence.

The drafts did not specify any place of payment; they were drawn and discounted in Canada. Defendant pleaded usury ; *held*, that the contract was to be governed by the laws of Canada, not of this State, and as by the laws of Canada usury is not a defense, the plea was not sustainable.

(Argued January 30, 1878 ; decided February 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 9 Hun, 561.)

This action was brought upon two bills of exchange drawn by one Horace Loveland on defendant, of one of which the following is a copy :

" $1,000.                          TILSONBURG, *July* 4, 1874.

" Two months after date pay to the order of myself one thousand dollars in gold coin, value received, and charge the same to account of          HORACE LOVELAND.

" A. H. GRISWOLD, Whitehall, N. Y.

(Indorsed)  " Pay to the order of the Merchants' Bank of Canada.                          HORACE LOVELAND."

The other was precisely like it, save that it was dated July 13, 1874. These drafts were discounted by plaintiff at Tilsonburg, Canada, at ten per cent. Loveland was in Canada buying lumber for defendant. Upon procuring the discounts he presented as evidence of his authority to draw and left with plaintiff a power of attorney, a copy of which is set forth in the opinion, in which are set forth also all further material facts.

*James Gibson*, for appellant. To maintain this action it was necessary to allege an unconditional agreement in writing to accept. (1 R. S., 768; *Bk. of Mich.* v. *Ely*, 17 Wend., 510.) The power given to Loveland was not exercised by his drawing in his own name. (*Minard* v. *Mead*, 7 Wend., 68; Chitty on Bills, 37, note 36; *Pentz* v. *Staunton*, 10 Wend., 271; *Spencer* v. *Field*, 10 id., 87; *Dewitt* v. *Walton*, 5 Seld., 571; *Combe's Case*, 3 Rep., 76, part 9.) The authority was special, and must be specially pursued. (*Batty* v. *Carswell*, 2 J. R., 48; *Munn* v. *Com. Co.*, 15 id., 44, 54; *Cuyler* v. *Merrifield*, 12 S. C. R., 559; Chitty on Bills, 23, 27; *Nixon* v. *Palmer*, 4 Seld., 400; *N. Y. and V. S. S.* v. *Gibson*, 5 Duer, 574; *Jaques* v. *Todd*, 3 Wend., 83–92; *Scrippenrick* v. *Bayard*, 1 Pet., 264; *Mulhall* v. *Keenan*, 18 Wall., 249; *Decatur Bk.* v. *St. Louis Bk.*, 21 id., 294.) Presentment was necessary, and has not been waived. (*Musson* v. *Luke*, 4 How. [U. S.], 262, 274.) Plaintiff was bound to examine the agreement and ascertain the extent of Loveland's authority, and see that he acted within his authority as to the bills discounted. (*Nixon* v. *Palmer*, 4 Seld., 400, 401; *Buck* v. *Vanderbilt*, 1 Sandf., 265; *Delafield* v. *Illinois*, 26 Wend., 192; *Andrews* v. *Kneeland*, 6 Cow., 354; *Suprs.* v. *Bates*, 17 N. Y., 246; Story on Agency, § 133.) The conversation between Loveland and plaintiff's cashier was hearsay, and improperly received in evidence. (*N. Y. L. Ins. Co.* v. *Beebe*, 3 Seld., 364; Story on Agency, § 78; Comyn's Dig., tit. Attorneys, ch. 14, note 3; *Suprs.* v. *Bates*, 17 N. Y., 246; *Stackpoole*

v. *Arnold*, 11 Mass., 27; *Galusha* v. *Hitchcock*, 29 Barb., 194.) The contract was governed by the laws of this State. (*N. Y., etc.*, v. *Gibson*, 5 Duer, 584; *Bright* v. *Judson*, 47 Barb., 29; *Lee* v. *Selleck*, 33 N. Y., 617, 618; *Boice* v. *Edwards*, 4 Pet., 41; *Musson* v. *Luke*, 4 How. [U. S.], 278; *Slocum* v. *Pomeroy*, 6 Cranch, 221; 2 Kent's Com., 460, note 1, 461, note 7; Story on Conflict of Law, §§ 291, 306; *Scofield* v. *Day*, 20 J. R., 102; 33 N. Y., 615; 32 Barb., 522; *Bright* v. *Judson*, 4 id., 36; *Cooper* v. *Waldegrave*, 2 Beav., 282; *Thompson* v. *Ketchum*, 4 J. R., 285; *Panning* v. *Consequa*, 17 id., 518; *Burckle* v. *Eckhart*, 3 N. Y., 132; *Jewell* v. *Wright*, 30 id., 264; *Hildreth* v. *Shepherd*, 65 Barb., 270; 2 Kent's Com. [5th ed.], 590, note *a;* id., 464, note *a;* id., 459, and note; *Roguett* v. *Overman*, 13 Alb. L. J., 445; *Andrews* v. *Heriot*, 4 Cow., 511–513; *Dewit* v. *Brisban*, 16 N. Y., 514; *Hull* v. *Blake*, 13 Mass., 153; Story on Conflict of Laws [4th ed.], § 301, *b; Jackson* v. *Jackson*, 1 J. R., 424–433; *Nellis* v. *Clark*, 20 Wend., 24; *Sheriff* v. *Hopkins*, 1 Cow., 101; *Robinson* v. *Bland*, 2 Burr., 1077.)

*A. H. Tanner*, for respondent. The fact of Loveland's agency was provable. (*Briggs* v. *Partridge*, 64 N. Y., 362, 363; *U. S.* v. *Fisher*, 2 Cranch, 358; *Coats* v. *Mayor, etc.*, 7 Cow., 585; *Stuyvesant* v. *Mayor, etc.*, id., 606; *Jerome* v. *Ross*, 7 J. Ch., 342.) Authority to draw drafts is equivalent to a promise to accept. (*Barney* v. *Worthington*, 37 N. Y., 112; *Ulster Co. Bk.* v. *McFarland*, 5 Hill, 433; 3 Den., 553; *Bk. of Mich.* v. *Ely*, 17 Wend., 510.) The contract was governed by the laws of Canada. (*Schudder* v. *Un. Nat. Bk.*, 1 Otto, 406.) The promise contained in the letter was an acceptance at common law and bound defendant. (*Goodrich* v. *Gordon*, 15 J. R., 6; *Parker* v. *Grule*, 2 Wend., 545; *Barney* v. *Worthington*, 37 N. Y., 112; *Ulster Co. Bk.* v. *McFarland*, 3 Den., 553; *Bk. of Mich.* v. *Ely*, 17 Wend., 510; *Scott* v. *Pitkington*, 15 Abb., 280; *Wiltenburgh* v. *Cook*, 18 Wal., 421, 429; *Coolidge* v. *Payson*, 2 Wheat., 66; *Pilau* v. *Missop*, 3 Burr., 166; *Pier-*

*son* v. *Dunlop,* Cowp., 571; *Meson* v. *Hunt,* Doug., 296; *Townsley* v. *Gumrall,* 2 Pet., 170; *U. S.* v. *Bk. of Metropolis,* 15 id., 377; 1 Pars. on Notes, 304; *Munger* v. *Shannon,* 61 N. Y., 259.) Defendant was estopped from denying that a necessity existed for drawing the drafts. (*Hurn* v. *Nichols,* 1 Salk., 289; *N. R. Bk.* v. *Aymer,* 3 Hill, 262; *F. and M. Bk.* v. *B. and D. Bk,* 16 N. Y., 125; *Griswold* v. *Haven,* 25 id., 595; *N. Y. and N. H. R. R.* Co. v. *Schuyler,* 34 id., 30–68; *Tome* v. *Parkersburgh R. R. Co.,* 39 Md., 36; 17 Am. R., 540, 555; Story on Agency, §§ 74, 75, 82; *Scott* v. *Pilkington,* 15 Abb., 280.) The alleged usury constituted no defence. (*Curtis* v. *Leavitt,* 15 N. Y., 1, 86, 88; *Lee* v. *Selleck,* 33 id.,      ; *Cope* v. *Alden,* 41 id., 303; *Andrews* v. *Pond,* 13 Pet.; *Miller* v. *Tiffany,* 1 Wal., 298; *Tilden* v. *Blair,* 21 id., 241; *Schudder* v. *Un. Nat. Bk.,* 1 Otto, 406; *Depeau* v. *Humphreys,* 20 Martin, 1; *Peck* v. *Mayo,* 14 Vt., 33; *Kilgore* v. *Dempsey,* 25 Ohio, 413; 18 Am. R., 406; 2 W'kly Dig., 389.)

CHURCH, Ch. J. The complaint was evidently framed upon the theory of charging the defendant as acceptor of the bill of exchange, upon which the action was brought, and upon the ground of an unconditional promise to accept, under the statute. (1 R. S., 768, § 8.) The alleged promise is contained in a power of attorney, which reads as follows:

"WHITEHALL, N. Y., *Feb.* 28, 1874.

" *To whom it may concern :*

"This is to certify that I hereby authorize Horace Loveland, as my agent, to make drafts on me, from time to time, as may be necessary for the purchase of lumber for my account, and to consign the same to the care of P. W. Scribner & Co., Whitehall, N. Y.

"A. H. GRISWOLD."

The draft in question was drawn by Loveland upon the defendant, and discounted by plaintiff upon the faith of this

instrument, as alleged in the complaint ; and it was proved on the trial that it was shown to and left with the plaintiff at the time the loan was made and the bill discounted. The principal contention of the defendant is that the authority was conditional, both as to the form in which it was to be executed and the existence of certain facts.

We think the authority was absolute. The words "as my agent" do not refer to the form of the contract, but to the capacity in which Loveland acted. If he drew in fact as agent, it was not material whether he described himself as such or not ; nor was it made material by the power of attorney. If it was sought to make the defendant liable as drawee, a question might be made that his name does not appear upon the paper. (*Briggs* v. *Partridge*, 64 N. Y., 362.) But to make him liable as acceptor, it is sufficient that the agent had drawn the bill ; and as the form was not prescribed, the form adopted was within the power. So the words "as may be necessary" are not words of condition, but mean to the extent necessary, and the words "for the purchase of lumber," etc., refer to the business in which the agent is employed, and do not constitute a condition precedent, which a party taking the paper upon the faith of the authority must show has been performed.

There is a distinction, I think, between a conditional authority to draw and a limitation of authority. In the former case the power cannot be exercised at all without showing the performance of the condition ; while in the latter it may be exercised within the limits prescribed. In all the cases where the authority to draw has been held absolute, the authority was limited in amount, time or otherwise. (*Barney* v. *Worthington*, 37 N. Y., 112.) In such cases the authority is absolute to draw within the limit prescribed. In this case the power cannot be said to be general and unlimited. It is restricted to the amount necessary to purchase lumber for the defendant, but within that limit is absolute and unqualified. The agent must determine the necessity of the amount required for the business in which he is engaged,

and not the person who parts with his money on the faith of the authority. It was proved on the trial that the money was loaned to be used in that business. The agent, by procuring the discount upon the faith of the power of attorney, represented that it was to be used in the business of the defendant, and that the amount was necessary.

As was said in *North River Bk.* v. *Aymar* (3 Hill, 267) : " The plaintiffs were apprised that Jacob D. Thurber had power to make and indorse notes, in the business of the testator, and notes actually made and indorsed by the attorney and purporting to have been so made and indorsed, in conformity with the power, were presented to, and in effect discounted by the plaintiffs. This act was equivalent to an express declaration that the notes were made and indorsed in the business of the testator," and the court held that the principal was bound by these representations. The rule was authoritatively formulated by this court in the *Schuyler Case* (34 N. Y., 30), as follows : " When the authority of an agent depends upon some fact outside the terms of his power, and which, from its nature, rests peculiarly within his knowledge, the principal is bound by the representations of the agent, although false as to the existence of such fact."

Here the authority was to draw bills to the extent necessary to purchase lumber. By the act of procuring the discount upon the faith of the authority, the agent represented both the necessity and the purpose, and it was proved besides that actual representations were made to the same effect. According to the authorities cited the principal is bound by these representations, and as to the plaintiff they are to be deemed true. We have then the case of an absolute authority to draw for the principal for any amount necessary for the purpose specified, and we have the representations of the agent, for which the principal is bound, that the necessity exists for the purpose named. The person discounting the bill need inquire no farther. This principle does not contravene the rule that in general a special authority must be strictly pursued, and that a principal is not bound when the

agent transgresses the limits of his authority, and that a person dealing with an agent is bound to take notice of the authority under which he acts, for the reason, as we have seen, that the authority was pursued according to its terms.

The question then recurs, whether the defendant promised unconditionally to accept the drafts. Without elaborating that question, I think it must be regarded as settled in this State that an absolute authority to draw is equivalent to an unconditional promise to pay the draft. (37 N. Y., 112, *supra; Ulster Co. Bk.* v. *McFarlan*, 5 Hill, 433 ; *S. C.*, 3 Den., 553; *Bank of Michigan* v. *Ely*, 17 Wend., 510.) And this is the natural and necessary implication.

The authorities cited by the counsel for defendant are not in conflict with these views. *Nixon* v. *Palmer* (4 Seld., 398) was the case of an authority to accept for a particular purpose, and an acceptance for a different purpose, which was known to the person taking the acceptance. In *Bank* v. *Gibson* (5 Duer, 574) the authority to draw was conditioned expressly "upon his remitting to them in currency, or bills of lading for hogs, the full amount for which he drew." The court held that this was a condition precedent to the promise to accept. The case in *Scrippenrich* v. *Bayard* (1 Pet., 264) was decided upon the ground of excess of authority. In *Mulhall* v. *Keenan* (18 Wall., 342) the authority was to "draw sight or time drafts when there was sufficient margin," and the court held that this was a limited authority which was known to all the parties, and could not be exceeded. In *Decatur Bank* v. *St. Louis Bank* (21 Wal., 294) the only contested question was, whether "hogs" were included in the term "cattle," used in the letter of credit, and it was held that they were. It was undisputed that the requisite quantity of hogs were shipped to meet the drafts, and this was held sufficient under a requirement to ship cattle. It is doubtless true that when the right to draw is limited in amount, or is dependent upon condition of the performance of some act, or that certain facts exist, it must appear that the draft was within the limit, or that the act

constituting the condition has been performed, or the facts exist. In this case the authority was not in terms upon any condition, and the general limitations of necessity and purpose were shown by the representations of the agent, for which the principal was bound, not to have been exceeded.

I do not think that the requirement to ship the lumber to a designated place can be regarded as a condition to the exercise of the power to draw. The liabilities of the parties were fixed at the time the draft was taken and the money advanced upon it. The act of shipping was to be performed subsequently, and to be performed by the agent of the defendant, who had confided to the agent the power and discretion in respect to that act. These directions were in the nature of instructions to the agent, rather than a limitation upon the power to draw drafts. Besides, the presumption is that the agent performed his duty and observed these directions, and if the defendant could avail himself of the failure of his agent to comply with them (which I do not believe) it was incumbent upon him to show such failure. This he neither alleged nor proved, and the presumption is that they were complied with. From these views it follows that the several objections to the complaint made at the trial are untenable. The facts are stated in the complaint as required by our system of pleading, and are sufficient to charge the defendant as an acceptor under the statute.

The declarations and representations of the agent, at the time the draft was discounted, are part of the *res gestæ*, and were admissible. (3 Hill, *supra.*)

The defense of usury depends upon whether the contract is to be governed by the laws of Canada or New York. By the former usury is not a defense; by the latter it is.

It is a general rule that a contract is to be governed by the laws of the place where it is made, unless by its terms it is to be performed elsewhere. (30 N. Y., 264.) This contract must be deemed to have been made by the defendant in Canada, and I think with a view to the laws of Canada.

The letter of credit authorized Loveland to draw for the defendant anywhere, and we may presume that the authority was to draw in Canada. It was contemplated by the parties that the letter of credit was to be delivered when the draft was discounted. It took effect, therefore, in contemplation of the parties when delivered to the plaintiff in Canada, and operated, as we have seen, as an acceptance, and in respect to this question, it is the same as though the defendant had been personally present in Canada and accepted the draft there. No place of payment was specified, and I think in such a case it is very clear that the laws of Canada, as to the construction and validity of the contract, must govern. *Lee* v. *Selleck* (33 N. Y., 618) was not as strong a case for the application of this principle. The action was against the indorser. PORTER, J., said: " The fact that he wrote his name in Illinois is of no moment if the engagement was consummated elsewhere. The note, with his indorsement in blank, was intrusted to his own agent for delivery to the plaintiffs in New York, and it was only by such delivery that it became operative as a mutual contract."

The advance was made in Canada, and the inference is irresistible that the parties dealt with reference to the laws there, especially in the absence of any indication of a contrary intent. It was a Canada contract, and the mere circumstance that some act was necessary to be done in this State to secure reimbursement does not change its effect. Story, in his Conflict of Laws, section 287, lays it down that when advances are thus made, the undertaking is to replace the money at the same place, even though the mode of reimbursement be by drafts on a foreign country. In *Lanusse* v. *Baker* (3 Wheat., 146), the rule is concisely stated as follows : " When a general authority is given to draw bills from a certain place on account of advances there made, the undertaking is to replace the money at that place." The same principle was reiterated in 6 Peters, 685, and was sanctioned in *First Nat. Bk. of Toledo* v. *Shaw* (61 N. Y., 293; see, also, 5 Cl. & Finn., 1). The authority

in this case was to draw anywhere, and therefore it was an authority to draw in Canada, and the laws of Canada must govern.

The judgment must be affirmed.

All concur.

Judgment affirmed.