THE GERMANIA NATIONAL BANK OF NEW ORLEANS, Respondent, v. WILLIAM G. TAAKS et al., Appellants.

Where to a promise to accept a bill of exchange is attached a condition precedent, which is a substantive part of the promise, and is so coupled with it as to show that the promisor did not intend to bind himself, except on compliance with the condition, this is not an unconditional promise to accept within the statute (1 R. S. 768, §§ 6, 8) such as will support an action against the promisor as acceptor.

Defendants' firm, doing business in the city of New York, wrote a letter to B. & Co., a firm doing business in New Orleans, which contained this clause: " We are ready to pay your sight drafts on us which you advise us as having been drawn against particularly described shipments to the extent of $50,000 on account of subsequent remittances." Plaintiff, in reliance upon this letter, purchased of B. & Co. two sight drafts, drawn by that firm upon defendants. They were not accompanied by bills of lading or any advices of shipments, and no such advices were sent to defendants. Defendants refused to pay the drafts. In an action thereon, *held*, that it could not be sustained either as an action upon an acceptance, because the promise was conditional, nor as an action upon the letter, treating it as a general letter of credit, because the condition upon which the liability depended was not performed; that while the letter did not contemplate that drafts were to be accompanied by bills of lading, or were only to be drawn after shipment had been fully completed, the promise was limited to the acceptance of such uncovered drafts as should be drawn on the credit of specific shipments in progress but not completed, of which defendants should be particularly advised before the drafts were presented for payment.

*G. N. Bank* v. *Taaks* (31 Hun, 260), reversed.

(Argued January 20, 1886; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 18, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 31 Hun, 260.)

The nature of the action and the material facts are stated in the opinion.

*Edward Salomon* for appellants. The defendants' letter of March 7, 1878, was not an unconditional promise to accept a

bill before it is drawn, and the trial court erred in holding it to be such. (2 R. S. 768, § 8.) No precise or particular words are requisite to create a condition, it depends upon the intention of the parties, to be collected in each particular case from the terms of the agreement itself, and from the subject-matter to which it relates. (2 Pars. on Cont. 525 ; 1 Pars. on Notes and Bills, 301 ; *N. Y. & Vir. State Stock Bk.* v. *Gibson,* 5 Duer, 584 ; *Harrison* v. *Smith,* 2 Sweeny, 669 ; *Lowery* v. *Steward,* 3 Bosw. 505 ; *Lockwood* v. *Brownson,* 53 Tex. 523 ; *Anderson* v. *Hick,* 3 Camp. 179 ; *Grant* v. *Shaw,* 16 Mass. 341.) The promise to pay the future drafts being conditional, the defendants are not liable as acceptors, whether the condition has been fulfilled or not. (1 R. S. 768, § 8 ; *N. Y. & Vir. State Stock Bk.* v. *Gibson,* 5 Duer, 574 ; *Harrison* v. *Smith,* 2 Sweeny, 669 ; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.,* 46 N. Y. 82, 88 ; *Shaver* v. *W. U. Tel. Co.,* 57 id. 459, 463.) No action can be maintained by the plaintiff upon the defendants' letter of March 7, 1878, as a letter of credit. (*Robbins* v. *Bingham,* 4 Johns. 476 ; *Walsh* v. *Bailie,* 10 id. 180 ; *Birkhead* v. *Brown,* 5 Hill, 634, 642, 643 ; *S. C.* affirmed, 2 Denio, 375 ; *Union Bk.* v. *Coster's Ex'rs,* 3 N. Y. 203, 214 ; *Evansville Nat. Bk.* v. *Kaufmann,* 93 id. 273, 276 ; *Whitford* v. *Laidler,* 94 id. 145, 148.) A failure to remit ended or exhausted the credit just as well as the drawing up to the amount of $50,000, and the promise to pay, even if unconditional, could have no application to drafts drawn after the credit was ended or exhausted. (*Ulster Co. Bk.* v. *McFarlan,* 5 Hill, 432 ; *S. C.* affirmed, 3 Denio, 553 ; *Merch. Bk.* v. *Griswold,* 72 N. Y. 472, 479.)

*Samuel Hand* for respondent. Commercial letters of credit should be construed as the parties who act upon them may be reasonably expected to understand them. (*Lawrence* v. *McCalmont,* 2 How. [U. S.] 450 ; *Mason* v. *Pritchard,* 12 East, 227 ; *Gelpcke* v. *Quentel,* 59 Barb. 250 ; 74 N. Y. 599 ; *Hoffman* v. *Ætna Ins. Co.,* 32 id. 413 ; *Barney* v. *Worthington,* 37 id. 112.) A second letter of credit, addressed to the

one for whose benefit it is written, is equivalent to a letter addressed to any one to whom it was shown and who acted upon it. (*Birkhead* v. *Brown*, 5 Hill, 643; *Union Bk.* v. *Coster*, 3 N. Y. 203, 214; *Barney* v. *Worthington*, 37 id. 112; *Shaver* v. *W. U. Tel. Co.*, 57 id. 468, 469; *Gelpcke* v. *Quentel*, 74 id. 599; *Parker* v. *Greeb*, 2 Wend. 545.) Under the letter of credit, the shipment of cotton was not a condition precedent to the defendants' liability, nor was it necessary that drafts should be accompanied when discounted with shipping documents; but the sending of shipping documents within a week was simply a duty of A. Eimer Bader toward the defendants, subsequent to their drawing upon the defendants, and the failure to do so in nowise affected the liability of the defendants to the *bona fide* purchasers. (*Gelpcke* v. *Quentel*, 59 Barb. 250; 74 N. Y. 599; *Merch. Bk.* v. *Griswold*, 72 id. 472, 480; *Lawrence* v. *McCalmont*, 2 How. [U. S.] 445; *Tounsley* v. *Samral*, 2 Pet. 183.) The letter of the defendants was an unconditional promise to pay, and they are liable thereon as the drafts in suit were actually accepted. (*Merch. Bk.* v. *Griswold*, 72 N. Y. 476; *Barney* v. *Worthington*, 37 id. 112; *Bk. of Mich.* v. *Ely*, 17 Wend. 508; *Ulster Co. Bk.* v. *McFarlan*, 5 Hill, 432; *Johnson* v. *Clark*, 39 N. Y. 216; *Gelpcke* v. *Quentel*, 74 id. 599.)

ANDREWS, J. This action is brought to recover the amount of two sight drafts for $10,000 and $15,000, respectively, dated at New Orleans, December 26, 1878, drawn by A. Eimer Bader & Co., a firm engaged in the business of buying and exporting cotton, upon Taaks & Lichtenstein, bankers, in the city of New York. The plaintiff, a banking corporation at New Orleans, purchased the drafts from A. Eimer Bader & Co., on the day of their date, in reliance upon a letter dated March 7, 1878, addressed by Taaks & Lichtenstein to Bader & Co., which had been exhibited to the plaintiff. The drafts were forwarded by the plaintiff to the city of New York, and there presented to Taaks & Lichtenstein for payment, which was refused. The firm of A. Eimer Bader & Co.,

although in good credit when the drafts were drawn, were in fact insolvent. On the next day, December 27, 1878, the principal partner in the firm committed suicide, and the insolvency of the firm immediately became known. The plaintiff claims to recover on two grounds, *first*, that the letter of March 2, 1878, was an unconditional promise by Taaks & Lichtenstein to pay the drafts, whereby, under the statute, they became liable as acceptors, and *second*, that if the letter is not an unconditional promise within the statute, it was a general letter of credit, upon faith of which the plaintiff purchased the drafts, whereby an obligation was created on the part of the defendants to repay the sums advanced by the bank.

The first ground upon which the plaintiff relies depends upon the true construction of the letter of March 7, 1878. Prior to that date there had been some dealings between the firm of A. Eimer Bader & Co., and the defendants, in the purchase by the defendants of the drafts of Bader & Co., drawn against shipments of cotton, and in some cases the defendants had accepted drafts drawn by Bader & Co., for their accommodation. On the 2d of March, 1878, Bader & Co., in a letter of that date, wrote the defendants as follows : " Although the greater portion of our business for this season is finished, and although for this reason the balance of our business will not be so very great, the thought nevertheless occurs to us whether it were not possible to open between ourselves a mutually advantageous arrangement, by which we should forward to you our drafts on Europe, for you to dispose of to the best advantage, and in return reimburse ourselves by drafts on you. One point, however, and that a material one, must not be overlooked, namely, that we are allowed by the buyers of our drafts to draw on account of such sold drafts in order to make advances to factors for cotton bought, but not yet received, or to pay invoices to the factors before the shipment is completed or bills of lading therefor signed. In the majority of cases bills of lading accompany our drafts, to be delivered on acceptance, and we should be pleased to hear what your views are as to such an arrangement." In reply to this letter, the defendants wrote the

letter of March 7, 1878. In that letter the defendants say : "In answer to your favor, we reply that we should be pleased to undertake the negotiation in our market, of your drafts, accompanied with shipping documents for shipments of cotton, drawn on leading houses in London, Paris, Switzerlånd and Germany. We will credit you with the rate of exchange, which we can procure by our indorsement, and with gold as sold, charging you one-fourth per cent commission. To facilitate our intercourse, we are ready to pay your sight drafts on us, which you advise us as having been drawn against, particularly to be described shipments, to the extent of $50,000 currency, on account of subsequent remittances, which you would then have to send us within a week, whereupon the credit will be renewed of itself. We charge you seven per cent interest per annum." On the 12th of March, 1878, Bader & Co. acknowledged the receipt of the letter of March 7, 1878, and expressed themselves satisfied with the conditions. The drafts of December 26, 1878, in question, had no bills of lading attached, nor were they accompanied with any advice of shipments, but in a letter from Bader & Co., to Taaks & Lichtenstein, written on the same day, after referring to some prior shipments promised, which had been delayed, they said : "We beg you to take note of five hundred bales more for reimbursement at sixty days on London bankers, with the shipment of which we are at present engaged. We have telegraphed for names of bankers, but expect they will mostly be Huth. We allow ourselves to draw upon you to-day : No. 22,-313, $15,000, in favor of ourselves; No. 22,321, $10,000, do." The drafts in question are those referred to in this letter, and the paragraph quoted is the only advice of shipments which is claimed to have been made in connection with the drafts. Upon these facts the question arises whether the letter of March 7, 1878, was an unconditional promise to pay drafts drawn by Bader & Co. Unless this question can be affirmatively answered, there can be no recovery in this case, as upon an acceptance of the drafts by Taaks & Lichtenstein, whatever other ground of liability there may be.

Under the statute, there must be either an actual acceptance of a bill, or an unconditional promise in writing to accept, to support an action against a party as acceptor. (1 R. S. 768, §§ 6, 8.) Section 8, by which the transaction in this case is governed, declares that " an unconditional promise in writing to accept a bill before it is drawn, shall be deemed an acceptance in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration." It is plain, we think, that the letter of March 7, 1878, was not an unconditional promise within this section. The promise of Taaks & Lichtenstein to pay the drafts of Bader & Co., to the amount stated, was coupled with the condition that Taaks & Lichtenstein should be advised by the drawers that the drafts were drawn against " particularly to be described shipments." It cannot be claimed that the drafts contemplated by these letters, were to be accompanied by bills of lading, or were only to be drawn after shipments had been fully completed. Such a construction of the defendants' engagement would be inconsistent with the purpose of the arrangement entered into between the parties. The proposition of Bader & Co., in their letter of March 2, 1878, was modified before acceptance by Taaks & Lichtenstein in their letter of March 7th. They required that the foreign drafts to be negotiated by them should be accompanied with shipping documents, and the request of Bader & Co. to be allowed to draw for advances to factors for cotton bought, but "not yet received," and to pay invoices to factors " before the shipment is completed, or bills of lading therefor signed," was only assented to in part by Taaks & Lichtenstein. They did not consent to make advances to pay for cotton bought by Bader & Co., but not delivered, but only to accept drafts against particularly to be described shipments, of which they should be advised by Bader & Co. It was the evident purpose of the arrangement finally consummated between Bader & Co. and the defendants, that Taaks & Lichtenstein should accept drafts not accompanied by bills of lading; but it is equally clear upon the face of the correspondence that their undertaking was limited to the ac-

ceptance of such uncovered drafts as should be drawn on the credit of specific shipments in progress, but not completed, of which they should be particularly advised before the drafts were presented for payment, and for which Bader & Co. were to send remittances within a week. By this course of business Bader & Co. were put in funds to complete the shipments in progress, and Taaks & Lichtenstein, while not having at the time bills of lading to secure their advances, had the assurance of Bader & Co., that they had cotton on hand, or immediately available, in progress of shipment, out of which reimbursement would be made. It is apparent that this was an important and substantial condition, coupled with the defendants' promise. It was, as claimed by the learned counsel for the defendants, to some extent, a guaranty of the good faith of Bader & Co., and though when performed it would not operate as a legal pledge of the cotton for the security of the drafts, it placed Bader & Co. in a situation where they could not in honor divert the cotton from that purpose, and where if the advice was fraudulently given, they would be exposed to serious consequences. What constitutes an absolute, unconditional promise to accept a bill, within the statute, has been considered in several cases. It is well settled that it is not necessary that there should be a promise to accept in express terms. An authority to draw, or a promise to pay, a bill to be drawn, is regarded as equivalent to a promise to accept. (*Ulster Co. Bk.* v. *McFarlan*, 5 Hill, 432; *Barney* v. *Worthington*, 37 N. Y. 112.) So, also, restrictions as to the time or amount, do not prevent the promise from being treated as unconditional and absolute as to drafts within the limitation. (*Bank of Michigan* v. *Ely*, 17 Wend. 508; *Ulster Co. Bk.* v. *McFarlan*, *supra*.) It is also held that an authority given to an agent to draw "from time to time, as may be necessary in the purchase of lumber," or as "you want more funds," operates simply as an instruction to the agent, and does not, as to persons dealing with him in good faith, constitute a condition. (*Merchants' Bank* v. *Griswold*, 72 N. Y. 472; *Bank of Michigan* v. *Ely*, *supra*.) The party dealing with the agent, may rest upon his represen-

tation, express or implied, that the draft is in the business of the principal, or that the funds are needed, and he is protected although it turns out that the representation is false. (*N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Merchants' Bank* v. *Griswold, supra.*) But where the condition is a substantive part of the promise, and is a precedent one, and is so coupled with the promise as to show that the promisor did not intend to bind himself, except on compliance with the condition, it is impossible in that case to regard a promise to accept, as an unconditional promise within the statute. This was, we think, the character of the promise in this case. The bank, when it took the drafts in question, was informed by the letter of March 7th, that the acceptances to be made by Taaks & Lichtenstein thereunder, were for the accommodation of Bader & Co. The condition of their promise to pay, was plainly written on the face of the letter. It was material, and could not be waived by Bader & Co. The condition not having been complied with, no obligation rested upon the defendants to accept or pay the drafts.

Having reached the conclusion that the defendants are not liable as acceptors, the question remains whether they are liable to refund the money advanced on the drafts, treating the letter of March seventh, as a general letter of credit. It is denied by the defendants that it possesses the characteristics of that species of commercial instruments. We think it unnecessary to enter into this controversy, for assuming that it was a general letter of credit, open for acceptance by any person to whom it might be presented by Bader & Co., as a ground of credit, it nevertheless amounted simply to a contract on the part of Taaks & Lichtenstein, to pay advances made in conformity therewith. They had a right to stand upon the very terms of their contract, and they were not bound, unless the condition upon which their obligation depended, was fulfilled. The language of Lord MANSFIELD in *Mason* v. *Hunt* (1 Doug. 297) is equally applicable to this case. Speaking of an agreement to accept, he said : " But an agreement to accept is still but an agreement ; and if it is conditional, and a third party takes the

bill, knowing of the condition annexed to the agreement, he takes it subject to such condition. (See, also, CHURCH, Ch. J., in *Merchants' Bk.* v. *Griswold*, 72 N. Y. 479.) It is scarcely claimed, that the general notice in the letter of Bader & Co., of December 26, 1878, that they were engaged in the shipment of five hundred bales of cotton, was a notice of " particularly to be described shipments," required by the letter of March seventh. There was no name of any ship, or of any consignee, and it gave no such information as was contemplated by the parties, and, as the sequel showed, no shipment was in fact in progress. The bank omitted to procure a letter of advice to accompany the drafts, which, if it had done, would have protected it, although the advice was false in fact.

In neither aspect, therefore, can the action be maintained. Not as an action upon an acceptance, because there was no acceptance in fact, and the promise was conditional, nor as an action upon the letter, treating it as a general letter of credit, because the condition upon which the liability depended was not performed.

It is claimed that the defendants by their letter of December 25, 1878, in answer to the letter of Bader & Co., of October 22, 1878, waived the condition as to advice, contained in the letter of March seventh. We think this claim is untenable. Bader & Co. in their letter of October twenty-second, expressed the hope that in exceptional cases, the defendants would not insist upon a strict fulfilment of the condition that their drafts should be covered by remittances within a week, assigning the reason that " owing to unfavorable weather, or other unforeseen circumstances," it might be impossible to obtain the shipping documents in the required time. The defendants in their answer said " that in exceptional cases we should meet your wishes in so far that we shall not hold ourselves strictly to the letter." There was no hint in the letter of Bader & Co. of a wish to change the condition that the drafts should be drawn against described shipments, of which the defendants should be advised, and the reason assigned by Bader & Co. for the desired change in the other condition, was entirely consistent

with the continuance of the condition as to advice. The weather, or other contingencies, might delay shipments in progress when the drafts were drawn, so as to prevent remittances within a week, and the letters related to this contingency only.

We think the judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.