Hull, J.
This was an action for damages, brought by Mrs. M. E. Richerson, the plaintiff below, against the plaintiff in error, for injuries which she claims she sustained on account of the negligence of the railroad company on or about the 16th day of June, 1897.
The case was tried to a jury, and a verdict returned for $500, upon which judgment was rendered by the court cf common pleas, and error is prosecuted in this court to reverse that judgment.
Counsel for plaintiff in error insists that the judgment should be reversed:
First: Because the verdict was against the weight of the, evidence,
Second: On accountjof errors in the charge of the court.
Third: Error in refusing to give instructions requested by the railroad company.
The negligence of which the plaintiff below complained against the railroad company was the management of its trains and cars in and about a certain crossing over Front street, just east of the village of Berea, in this county.
The railroad company has and at the time of this accident had at this crossing five tracks, laid closely^ together over said crossing.
The plaintiff and her husband were approaching the *387 crossing in a buggy, Mr. Richerson driving the hors©. They both testify positively that the horse was on a walk, and that they looked and listened for approaching train® and heard neither bell nor whistle. They testify that the view was obstructed by cars standing upon the railroad track nearest to them, on each side of the crossing, leaving a space between about wide enough for two vehicles to pass. They say they saw no train, and heard none, and that just as their horse reached the first track, a locomotive, whidfo was attached to some cars and standing in the middle track, started east. They say that this locomotive was obscured from their view by the cars standing on the first track; that they did not see it nor hear it until their horse, as I have-said, reached the first track. That the noise of the locomotive in starting, the puffing as the witnesses call it, or the exhaust from the locomotive, frightened the horse; that he reared, backed up and whirled around, tipping over the buggy about fifty feet from the crossing, throwing Mrs. Richerson out and inflicting personal injuries on her of which she complains.
The plaintiff below complains of several acts of negligence on the part of the railroad company: that the company was negligent in having its cars standing on the crossing so near the higwhay; in not having a flagman to notify travelers of the approach of trains; in having a locomotive standing so near the highway obscured by cars, and starting the same without making any effort to ascertain whether travelers were ápproaching; and, further, that the company was negligent in approaching the crossing with its locomotive without giving a signal either by bell or whist!®». All of these things are complained of against the company,.
But the case turns largely upon the question whether the-signal by bell and whistle, or either of them, was given, or if the bell was rung or the whistle blown near the crossing. If plaintiff and her husband were looking and listening, a® they testify they were, they must have heard the signal,and if plaintiff heard the signal in time, of course she would boguilty of contributory negligence in attempting to cross-with knowledge that the train was approaching.
And it is urged by counsel for the railroad company that the manifest weight of the testimony is in favor of the claim- *388 that the signal was given by both bell and whistle, and that for this reason the verdict should be set aside.
As I have said, the plaintiff and her husband both testify positively, that as they approached the crossing with their horse on a walk, they looked and listened, and heard neither bell nor whistle, and had no knowledge of the proximity of the locomotive until their horse was upon the first track.
Five witnesses, called ■ for the railroad company, testify that the signals were given. They were the fireman, the engineer, two brakemen and a witness by the name of Knight — who was sitting in front of a neighboring saloon reading a newspaper. Counsel for plaintiff in error insists that affirmative evidenceof this character is entitled to greater weight than the testimony of Mr. and Mrs. Richerson, which he denominates negative testimony, and an instruction based upon this claim was asked of the court and refused. The instruction requested was as follows:
“Where there are witnesses who testify positively as to a fact, and others who merely testify negatively as to that which they did not see or hear, and all of the witnesses are unimpeached, the jury must give the greater weight to the testimony of those who speak positively."
In our judgment the claim of counsel for the company can not be máintained and, under the testimony in this case, this instruction was properly refused by the court. Something similar to it, however, was given in the general charge.
The testimony of a witness who is near enough to hear and see, that he was paying attention, and that he looked and listened for a train, and that he saw.no train, and that the bell was not rung nor whistle sounded, is not negative tesimony, but is as much positive or affirmative testimony as the testimony of a witness who swears that a signal was given. Where a witness testifies simply that he did not hear a signal given, and the fact is that at the time he was not giving particular attention to the subject and can go no further than to simply say he did not. hear it, that is negative testimony; but the testimony of Mr. and Mrs, Richer-son was not of that character. This court held in Railroad Company v. Schade, Administrator, 15 Circuit Court Reports, 424, that such testimony, as that'of Mr. and Mrs. *389 Richerson is not negative testimony, and is entitled to the same weight as what is usually denominated affirmative testimony, and a majority of the court say, through Cald.well, judge, on pages 436-437 of the opinion:
“There were several road crossings between where they were and Hottingham, and they were listening for the approach of that train and paying particular attention, and they say that the bell did not ring at any of these road crossings, nor did the whistle blow; and they testify the same as to this crossing here. That is not negative testimony, Where a person testifies that he was looking or listening and paying particular attention to a certain thing as to whether the bell rings or not, and then testifies as to that that it did ring or that it did not ring, one is as positive as the other.”
This case was afterwards affirmed by the supreme court without report.
This proposition, so stated by Judge Caldwell, is abundantly supported by the authorities, I quote: 72 Ill., 235, the first paragraph of the syllabus:
“Where witnesses who, at the time of an accident at a railroad crossing, were within thirty yards of it, testify that they were in a situation to have heard a bell ring or whistle sounded, if there had been any rung or sounded, and that they did not hear any, such testimony can not be regarded as negative testimony.”
• 79 Iowa, 389, the sixth paragraph of the syllabus:
“In such case an instruction was properly refused which charged that ‘affirmative testimony, as that a bell was rung or a whistle sounded, is entitled to moie weight than negative testimony as that a bell or whistle was not heard, because it ignored the comparative credibility and means of knowledge of the witnesses.”
I quote further from Wharton on Evidence, volume 1, section 415:
“A negative witness, also, whose attention is concentrated on a particular point, may outweigh an affirmative witness whose attention has not been so concentrated.”
And upon this same proposition, Jones on Evidence, volume 3, section 901:
“But the rule that positive testimony is of greater weight *390 than negative testimony has some important exceptions, and it should never come in conflict with the general rule that the weight of the testimony should be left to the jury; ®ueh testimony is admissible, and, together with corroborating circumstances, may outweigh positive testimony. As will be seen from the caaes already cited, this question of fcke weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given. In such cases the question is purely for the jury, and it has often been held that negative evidence was sufficient to sustain a verdict.”
In a case of this character the law imposes upon the plaintiff the burden of proving that the signals were not given. To impose this burden upon the plaintiff, and then discredit his testimony on the ground that it is negative testimony, and have the jury instructed that it is not to receive the same weight as the testimony of the employes of the railroad company who testify that the signal was given, would be both unjust and unreasonable, and is not the law. But where a witness testifies as Mr, and Mrs. Rieherson do in this case, that they were giving special attention to the subject, were both looking and listening, and testify positively that no signal was given, such testimony is entitled to be regarded as positive testimony, and to be given the same weight and consideraren.
The supreme court has'said, in 22 Ohio St,, 118:
“A verdict or finding will not be reversed on the weight of evidence unless so clearly unsupported by it as to show misapprehension, or mistake, or bias, or wilfull disregard of duty on the part of the jury.”
Although the witnesses, called for the defendant below, outnumbered those called by the plaintiff, the weight of the testimony and the credibility of the witnesses was a question for the jury, and we are unable to say that their finding under the rule laid down by our supreme court, was against the weight of the evidence. The plaintiff and her husband were, of course, interested witnesses; but, on the ■other hand, the fireman, the engineer and the two brakemen can hardly be called disinterested witnesses in view of itheir relations to the transaction.
As was said by the court of appeals of the state of New *391 York, 101 N. Y., 422, in speaking of the testimony in such a case:
“They were, however, in'the employ of the defendant, themselves interested in proving that the proper signals were given by those instruments, and the law does not require an adverse party to put his case in the hands of persons having such relations to the transaction.”
I have stated the claims of plaintiff as to the location of the cars upon the tracks at each side of the crossing, and the locomotive which it is claimed frightened the horse. There was some conflict in the testimony upon this question as well. Witnesses called by the defendant testified that the cars standing on the first track were outside of the highway, and the railroad men upon the locomotive and train which frightened the horse, testified that the train was not stopped on the track, but moving slowly and making no more than the usual noise. The locomotive was attached to a number of freight cars that had been picked up in the yards at Berea and started east for Cleveland. We think that the question of the railroad company’s negligence under the testimony was proper to be submitted to the jury, and that it can not be said that the finding of the jury was against the weight of the evidence.
Second: The plaintiff in errqr complains farther of an error in the charge of the court. The court charged the jury as follows:
“The law imposes upon the defendant the duty, within certain limits and certain places, to sound bells and blow a whistle, and the failure to do that is charged as one of the acts of negligence, which it is claimed by the plaintiff was proximately the cause of her injuries.* So if you find that the defendant company failed to sound its whistle or ring its bell within the limits prescribed for this crossing, and by reason of that, and without fault on the part of the plaintiff contributing proximately to her injuries, if you so find she was injured, then liability would attach to the defendant company for her injuries, and a recovery could be had on that ground.”
It is insisted that this instruction is erroneous because it states that the defendant was by law compelled to ring bells and blow a whistle within certain limits, without these limits *392 being given by the court. In the'absence of any request on the part of the defendant below to state these limits to the jury, we think this was not erroneous. It is probable that in the argument by counsel to the jury the statutory limits had been mentioned.
It is further claimed that according to this instruction, if the signals were not given, th9 company would be liable for plaintiff’s injury, whether the failure to give such signals was the proximate cause of her injuries or not. We do not think that this construction can be placed upon the language used by tlie court. The court said:
“So if you find that the defendant company failed to sound its whistle or ring its bell within the limits prescribed for this crossing, by reason of that and without fault on the part of the plaintiff contributing proximately to her injuries, if you so find she was injured, then liability would attach”, etc.
This was equivalent to saying to the jury that-if they found that by reason of the failure of the company to sound its whistle or ring its bell the plaintiff was injured, the company would be liable. And in the next paragraph of the charge the court said:
“If they were not sounded, did the failure to sound them upon that occasion, either the one or the other, proximately contribute to or cause the injuries to the plaintiff?”
Taking these instructions together, we think the jury were given fairly to understand that the company would not be liable for a failure to blow the whistle or ring the bell, unless such failure proximately contibuted to plaintiff’s injuries.
At the conclusion of the court’s general charge, counsel for the railroad company requested thirty-five separate instructions, nine of which were given and twenty-six refused; and on account of each of the refusals error is charged.
Request No. 1 asked that a verdict be instructed for the defendant.
This, under our views, was, of course, properly refused.
No. 2, requested that the jury be instructed that the defendant was not required to maintain a flagman at the crossing, and that the failure to have a flagman there could not be charged as negligence.
E. A. Eoote, for Plaintiff in Error.
Noble, Finney & Willard, for Defendant in Error.
It is true that it is not negligence as a matter of law not to have a( flagman at a crossing outside of a municipality. Whether the circumstances of this particular case and the situation at this crossing required a flagman in the exercise of ordinary care or not, was a question for the jury.
Request No. 3, was similar to No. 2, except that gates were included with a flagman.
Request No. 4, was as follows:
“The defendant was not negligent in leaving cars on its tracks close to the crossing of Front-street, so long as said cars were not upon the higwhay.’’
The leaving of the cars upon the tracks and having the locomotive behind them and starting the locomotive without warning'so as to frighten plaintiff’s horse, was the negligence complained of in this action. While it would not be negligence on the-part of the railroad company to leave cars on its tracks close to the crossing if they were not in the highway, still it would be misleading to the jury to have' them so instructed in this case, because that, in connection with other facts, was the negligence complained of in this case, The leaving of the cars on or near the highway was only one of several things complained of, all of which, taken together, the plaintiff charged as negligence against the defendant.
The same general objection can be made to very many o the other requests which were refused. Some act or item of conduct is selected, and the court is requested to charge the jury that that alone would not constitute negligence, and these instructions containing this objectionable feature were properly refused. Some of the requests refused were objectionable on other grounds, and some were covered by the general charge. It is not possible to review all these requests within the limits of this opinion.
It is sufficient to say that after a very careful examination of all of the requests that were refused, we are of the opinion that there was no error in such refusal.
The charge of the court was very full and fair upon all of' the issues of the case,
We find no error in-the record, and the judgment is therefore affirmed.