THE MERCHANTS' BANK OF CANADA, Respondent, *v.* LOUIS M. BROWN and IDA M. SPIER, as Executors, etc., of WILLIAM E. SPIER, Deceased, Appellants.

*A note made and payable in Canada is governed by Canadian laws — a lead pencil entry by the bank at which the note is payable of an indorser's address on the back of the note — it will not relieve the indorser — notice of dishonor under the Canadian Bills of Exchange Act — when not sufficient.*

A note made in Canada, and by its terms payable there, is a contract governed by the laws of the Dominion of Canada.

A lead pencil entry on the back of a promissory note beneath an indorser's signature of the words "Glens Falls, N. Y.," made by the manager of the bank at which the note is payable pursuant to a custom of the bank and for the purpose of aiding its clerks in keeping the bank records, does not constitute an alteration of the contract of indorsement which will relieve the indorser from liability.

Under the Canadian Bills of Exchange Act, 1890 (53 Vict. chap. 33, § 49) which provides with reference to the service of notice of dishonor of bills and notes, "Where the drawer or indorser is dead, and the party giving notice knows it, the notice must be given to a personal representative, if such there is, and, with the exercise of reasonable diligence, he can be found," the mailing of notice of dishonor to an indorser known to be dead, directed to a post office known to be one at which he had not received his mail while living, is not a good notice of dishonor.

APPEAL by the defendants, Louis M. Brown and another, as executors, etc., of William E. Spier, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Warren on the 8th day of December, 1902, upon the verdict of a jury, and also from an order bearing date the 30th day of October, 1902, and entered in said clerk's office, denying the defendants' motion for a new trial made upon the minutes.

The action is upon a promissory note made by the Republic Power and Cyaniding Company, dated Montreal, March 1, 1901, payable six months after date to the order of that company at the Merchants' Bank of Canada, in Montreal, which is indorsed by that company, by William E. Spier, defendants' testator, and by A. A. Ayer. Spier died May 8, 1901, and the defendants were appointed executors of his will by the Surrogate's Court of Warren county

July 1, 1901. This suit is brought on the indorsement made by Spier. The defenses are that there was a failure to give due and timely notice of protest and that there has been a material alteration made in the contract of indorsement, which discharged Spier and his estate from liability on the note.

*Edgar T. Brackett,* for the appellants.

*Bell & Wait,* for the respondent.

CHESTER, J.:

The note, having been made in Canada and being by its terms payable there, was a contract governed by the law of that Dominion (*Merchants' Bank* v. *Griswold,* 72 N. Y. 472; *Union National Bank* v. *Chapman,* 169 id. 538.)

The Bills of Exchange Act, 1890, in Canada (53 Vict. chap. 33, § 49) provides in relation to notice of dishonor of bills and notes : "Notice of dishonor, in order to be valid and effectual, must be given in accordance with the following rules : * * * Where the drawer or indorser is dead, and the party giving notice knows it, the notice must be given to a personal representative, if such there is, and, with the exercise of reasonable diligence, he can be found."

There being days of grace under the Canadian statute (§ 14), the note in question became due September 4, 1901. On that day, and after default in the payment of the note, the manager of the plaintiff bank wrote and mailed a letter addressed to " Stephen Brown, Esq., Executor of the Estate of the late Mr. Wm. E. Spier, Glens Falls, N. Y.," in which he said : " A promissory note of the Republic Power & Cyaniding Co. for $10,000, endorsed by William E. Spier, fell due to-day and has been protested for non-payment. We beg to inform you that we are handing it to our solicitors with instructions to enforce payment from the estate of the late Mr. Spier." Stephen Brown, to whom this letter was addressed, was not the executor of such estate, but his son and law partner, Louis M. Brown, was. The letter was received by Stephen in due course of mails and was by him carefully concealed from his son, the executor. The former testified that when he received it he read it carefully but put it back into the envelope and locked it up in the private box where he kept his private papers ; that he saw it was directed to the *executor*

of the estate of William E. Spier; that he thought he was on the other side of the case and was not trying to help those people in Montreal to collect this note; and that he did not tell the executor because he thought he owed allegiance to the estate of William E. Spier and not to the bank at Montreal.

There was much evidence given upon the question as to whether or not the bank had exercised reasonable diligence in finding and giving notice to the personal representatives of the estate, the indorser being dead. It was shown that Stephen Brown went to Montreal some time in July, 1901, and called first upon Mr. Ayer, the other indorser, and next upon Mr. Ramsey, the manager of the plaintiff. He called upon the latter by request of his son, the executor, to procure information concerning the note and to obtain an inspection of the same, and to find out whether, in his opinion, the indorsement by Spier was genuine. There is some conflict between the testimony of Mr. Ramsey and Stephen Brown as to what occurred upon that occasion. Mr. Ramsey stated that Brown gave him his card with the words " Mr. Stephen Brown " thereon and stated that he was a lawyer and represented Mr. Spier's estate. Ramsey swears that he did not inform him that Louis M. Brown was executor of the estate. Mr. Brown, on the other hand, says he told him that his son was executor and that the widow was executrix. Mr. Ramsey testified that from the conversation he had at that time he believed Stephen Brown was the executor. On September fourth Ramsey had mislaid the card Brown had given him, and had forgotten the name of the gentleman who left it. When the note was not paid he, on the day it became due, telephoned to Ayer, who was the president of the company which made the note and the last indorser thereon, and asked him if he could tell him who was the executor of Spier's estate, and Ayer informed him that Stephen Brown of Glens Falls, N. Y., was, and Mr. Ramsey replied, " yes, that is the name, an old gentleman who called on me some time ago;" Mr. Ayer said, " yes, he called on me also." Thereupon Ramsey wrote and mailed the letter addressed to Stephen Brown, executor, which has been heretofore mentioned. About ten days after this letter was mailed the executor, Louis M. Brown, went away from Glens Falls and did not return until the twenty-fifth of September, and the next day, as he says, he personally learned for

the first time, through the cashier of a bank in Glens Falls, to whom the note had been sent for collection, that it had been dishonored, although there is evidence which justifies the inference that he knew it within a week or ten days after the maturity of the note, for he testified upon cross-examination that in a conversation with his father, which was from a week to ten days after the maturity of the note, the latter told him he had received a letter from the Canada bank to the effect that it was about to commence suit on the note or was about to put the note in the hands of an attorney to have suit commenced.

It would appear that the reason the notice of dishonor did not come to the executor within a day or two after it was mailed was due quite as much to the views of professional ethics entertained by the counsel employed by him, and to the conduct of such counsel in withholding a letter wrongly addressed to him as executor, as to the error of the manager in so addressing the letter containing such notice. But we do not think it of much consequence in the decision of this case when the executor in fact received the letter or first received actual notice of the non-payment of the note. These facts were important only as related to the questions whether the bank exercised reasonable diligence in finding and giving notice of dishonor to the personal representatives, and whether any delay in giving notice had been excused. These were purely questions of fact for the jury, and each has been determined by their verdict against the contention of the defendants, and we think upon sufficient evidence.

There has been no alteration whatever in the contract of indorsement made by Spier, and the defense must fail upon its claim that there was. The words " Glens Falls, N. Y.," were written in pencil by the manager of the bank below Spier's indorsement of his name upon the note as a mere memorandum, pursuant to the custom of the bank to do so where the address of the indorser was not known, and it was done for the purpose of direction to the clerks in the bank in keeping their records. The penciled words upon the note clearly show that they are not in the handwriting of Spier so as to amount to a direction of his below his name, designating a place where he desired a notice of protest to be sent. The penciled addition in no way changed the obligation of the indorser, nor did it in the slightest degree change, or assume to change, his contract. It

was a mere memorandum made for the convenience of the bank, and the defense based thereon must, therefore, fail.  (Daniel Neg. Inst. [5th ed.] § 1399; *Struthers* v. *Kendall*, 41 Penn. St. 214.)

But notwithstanding the conclusions we have reached upon the questions so far discussed, we think there must be a new trial, because of exceptions to the refusal of the court to charge some of the requests made by counsel for the defendants.

The direction first asked was, that as the indorser Spier was dead and that fact was known to the plaintiff at and before the maturity of the note, it was the duty of the plaintiff to give notice of the dishonor of the note to the executor or executrix, if either could be found with the exercise of reasonable diligence.  Under the issues in the case as tried, the defendants were entitled to have the jury so instructed.  There was no controversy over the death of Spier or the knowledge of the plaintiff, through its proper officer, of that fact.  The complaint alleged his death months before the maturity of the note.  This was not denied by the answer, and the whole issue, as tried before the jury, was not that he was not dead or that the plaintiff did not know of it, but that the plaintiff was misled and misinformed as to who his representatives were, and that in view of all the circumstances the plaintiff had done all that could reasonably be required in giving notice of dishonor of the note in the manner in which it did.

A further request was made that inasmuch as the plaintiff's manager knew of Spier's death before the date the note became due, the notice of dishonor sent to Spier at Montreal was insufficient to charge the defendants.  The effect of the refusal of this request was to hold that notice of dishonor mailed to an indorser known to be dead, directed to a post office known to be one at which he had not received his mail while living, was a good notice.  We do not think the Canadian Bills of Exchange Act can be so construed. Nor did the plaintiff so construe it, for it attempted to give notice of the dishonor of the note to the representatives of the indorser, and tendered the issue on the trial that it had done all in that respect that could reasonably be required of it.

There were other requests of a similar character which the court refused to charge; but inasmuch as we deem those discussed fatal to the judgment, it is unnecessary to consider them in detail.

The judgment and order must be reversed, and a new trial granted, with costs to the appellants to abide the event.

All concurred.

Judgment and order reversed and new trial granted, with costs to appellants to abide event.