## MULHALL *v.* KEENAN ET AL.

1. Where, on a suit to recover a balance of a draft claimed because consignments of cattle against which the draft was drawn, have not proved adequate to protect it, the question is whether the draft was drawn under a letter of instructions and in behalf of the doings of another person, one T., *an agent of the drawees,* or whether it was drawn by the drawer in

behalf of transactions *on his own account*, a letter from the drawer in which he says, "I ship you twelve cars of cattle. *I may buy some more before Mr. T. gets back. Do the best you can*," is admissible evidence against him to show that it was on his own account.

2. Entries in the defendant's own books, whose purport was to show that the transaction was on account of T., are not admissible.

3. When the letter of instructions told the person to whom it was written to draw "when there is a sufficient margin," evidence as to the fact whether there was sufficient margin or not is clearly admissible, unless there be something special to render it not so.

4. The fact that a bill of particulars filed with the declaration is made up of the debit of the draft sued on, sundry credits and the balance claimed, does not tend so clearly to show that the only question which the plaintiff meant to raise was whether the transaction was one on account of T., or an individual one, as that he may not, admitting that the transaction was on account of T., give evidence to show that the recipient of the letter had not obeyed his instructions to draw only when there was a sufficient margin.

5. The only remedy for surprise is a motion for new trial, and the refusal of a court below to grant one is not reviewable here.

ERROR to the Circuit Court for the District of Missouri; the case being thus:

Keenan & Co. were residents of Chicago, and commission dealers in live stock there. On the 7th of July they gave W. L. Tamblyn, then about to go to St. Louis to buy cattle for them, a letter of introduction to Joseph Mulhall, a similar dealer of that place, and who previously to this had had dealing in cattle on his own account with Keenan & Co. The letter was in these words:

MR. JOSEPH MULHALL.                    CHICAGO, July 7th, 1870.

DEAR SIR: The bearer, W. L. Tamblyn, goes to your city to buy cattle, and any favors conferred will be reciprocated. You will make advances on any stock consigned to me, and draw sight or time drafts *when there is sufficient margin*, and oblige,

                                Yours, respectfully,
                                        KEENAN & Co.

Cattle were accordingly forwarded from St. Louis to Keenan & Co. at Chicago; and at the conclusion of one transaction Keenan & Co. claimed a balance of $2336.26, from

Mulhall, on account of a draft for $9070.73, drawn by Mulhall on the 20th of July, 1870, and paid by them, which draft had not been discharged by the price for which the cattle against which it was drawn had been sold.

That Keenan & Co. by the transaction in this particular lot of cattle had got out of pocket to the extent asserted by them was apparently not denied. The question was whether Mulhall was liable to repay to them the deficit.

*He* asserted that he was not, that he had drawn on Keenan & Co. pursuant to the above-quoted letter, for cattle bought by Tamblyn, and that regard being had to the value of the cattle sent he had kept his drafts within such limits that he had left a "sufficient margin;" the inference being, of course, that if Keenan & Co. were out of pocket, they had made injudicious sales or had acted negligently. Keenan & Co. asserted, on the other hand, that Mulhall had not sent the cattle under the above-quoted letter, but had sent them on his own account, and independently of the letter. It was admitted that Mulhall when forwarding his draft had not advised Keenan & Co. that it was drawn in pursuance of the letter of credit, and that the cattle were Tamblyn's. And further, that after the cattle in connection with which the draft had been drawn reached Chicago, Keenan & Co. thus telegraphed to Mulhall:

To Joseph Mulhall,                 July 25th, 1870.
       St. Louis, Mo.

Sold forty-four tails ($4.40), car natives, 7 cents; balance unsold; four half best offer. Can ship New York $50 car. Answer.

                     W. T. Keenan & Co.

And that the bookkeeper of Mulhall (Mulhall himself at the time being ill, and, as the bookkeeper testified, "not having been consulted," and he the bookkeeper "acting on his own judgment and responsibility from his general position in Mulhall's office, and never thinking of the cattle being Tamblyn's, nor looking at the books,") returned a telegram thus:

To W. T. KEENAN & Co.,
                Chicago.

Ship one-half cattle to William Thompson; 100th Street, New York; other half to your consignees.

                JOSEPH MULHALL.

The questions thus were whether Mulhall had sent the cattle about which the deficit arose, under the letter.

If he had not, there was, of course, an end of his defence from that source. If he had, then arose a further question, to wit:

Whether he did keep his drafts within such limits as that, regard being had to the value of the cattle, he had left a " sufficient margin."

The parties being unable to agree, Keenan & Co. sued Mulhall in assumpsit, and filed with their narr a bill of particulars thus:

                            CHICAGO, August 6th, 1870.

### *Joseph Mulhall in account with Keenan & Co.*

| 1870. | DR. | | |
|---|---|---|---|
| July 26. | To draft, . . . . . . . . | $9070 | 73 |
| Aug. 4. | " protest on draft, . . . . . | 2 | 60 |
| " 6. | " exchange on money dep., . . . . | 3 | 08 |
| " " " " | " draft drawn, . . . . | 4 | 90 |
| | | $9081 | 31 |

| | CR. | | |
|---|---|---|---|
| July 26. | By account sales, 59 cattle, . . . . | $3112 | 28 |
| Aug. 6. | " " " 126 " Thompson & Co., | 1610 | 13 |
| " " " " " | 114 " Ranken, . . | 1892 | 74 |
| July 30. | " " " 1 cow, . . . . | 10 | 00 |
| | Balance due, . . . . . . | 2456 | 16 |
| | | $9081 | 31 |

On the trial, the plaintiffs, in order to show that the draft was drawn on Mulhall's own account, offered in evidence a letter of Mulhall's thus:

                            ST. LOUIS, July 12th, 1870.

W. T. KEENAN.

DEAR SIR: I ship you 12 cars of catle Mr. Tamlyn has one

half Entrust\* he allso has th cst of th catle I will put fore thousand Dollars charges or moore on th catl and' draw for th ballens *I may by som moore Befor Mr. Tamblyn gets back Dow th best you can*

yurs truly<br>
JOSEPH MULHALL.

To the admission of this evidence the defendant objected, but the court received it.

The defendant then, in order to show that the cattle were sent on account of Tamblyn, offered in evidence his own books, in which an account of the cattle was entered, with a heading thus:

"PURCHASE CATTLE.    *(Tamblyn.)*"

The plaintiff objected to the evidence, and the court excluded it.

Mulhall himself swore that it was always the rule in their business where a party advanced for another, as he said " in this case I did for Tamblyn on Keenan's credit," to ship the cattle in the name of the person who advances, and he added, " These cattle were shipped in my name."

The plaintiff, then, near the close of the trial, offered evidence to show that assuming that the cattle were sent on account of Tamblyn, and under the letter of July 7th, 1870, Mulhall in his drafts had not allowed for shrinkage of the cattle on their way to Chicago, and for bad markets; in other words, had not left, as in the letter of July 7th he had been directed to leave, a " sufficient margin."

To this evidence the defendant objected, but the court received it.

The court, to which by a stipulation of the parties the case had been submitted, found for the plaintiffs $2336.26, the amount claimed, with interest.

The defendant and his counsel thereupon filed affidavits,

---

\* The meaning of this is not quite clear. It was perhaps explained by what Tamblyn swore, to wit, that after he got to St. Louis, Mulhall bought some cattle for himself and then resold one-half of them to him; though Tamblyn swore that these " were not the cattle sued for."

very full to the point, that they had been completely taken by surprise by the admission of the testimony to prove that the margin was not sufficient; that they had supposed that the only issue was whether Mulhall was liable for the draft as his individual transaction. The counsel swore that he had so informed Mulhall near the close of his trial; and that no question as to margin could arise. Mulhall swore that in point of fact there was sufficient margin, and that he had informed his counsel when evidence was given to the contrary, that he could prove this, and that the deficit sued for had arisen from the negligence of Keenan & Co., but that the counsel informed him that the case was closing, and that the witnesses (who were at stock-yards between one and two miles from the place of trial) could not be got in time. He swore further that he could still prove all that he thus alleged, if opportunity was given to him. The affidavits of other persons were filed to show that there was a sufficient margin. A new trial was accordingly moved for; but the court refused it.

The case was now here on exceptions by the defendant:

1st. To the admission of his letter of July 12th.

2d. To the exclusion of the entries in his own books.

3d. To the admission of testimony about margins.

Objections were also made here that the court below had improperly disregarded the affidavits of Mulhall and his counsel about surprise, which it was argued it ought not to have done, since the bill of particulars filed with the declaration showed that the claim was on Mulhall as for an individual transaction, and naturally led to the belief that no question about margins would be raised.

*Messrs. M. Blair and F. A. Dick, for the appellants, insisting chiefly on the first and third exceptions; Mr. J. M. Krum, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

The defendants in error, under the name of Keenan & Co., sued Mulhall to recover a balance alleged to be due to them upon a draft drawn by him and accepted and paid by them,

The parties waived the intervention of a jury, and submitted the cause to the court. The court found for the plaintiffs, and assessed their damages at $2336.26. Judgment was entered accordingly. There was no special finding of facts. A bill of exceptions in the record shows, that during the progress of the trial, the defendant excepted to the admission of evidence offered by the plaintiffs, and to the rejection of evidence offered by himself. Three specific errors have been assigned in this court.

(1.) The admission in evidence of the letter of Mulhall— of the 12th of July, 1870—to the plaintiffs.

(2.) The exclusion of certain entries on the defendant's books.

(3.) The admission of the testimony relating to margins.

The second assignment has been virtually abandoned, and need not, therefore, be considered. It is too clear to admit of doubt that the ruling to which it relates was correct.

The letter of the 12th of July, 1870, stated, among other things, that Mulhall might buy more cattle before Tamblyn got back. It said nothing of Tamblyn having any interest in such purchase, or in any further purchase the defendant might make. Mulhall testified that the cattle were shipped to Keenan & Co., in his name. When consulted by them about the disposition of the cattle unsold, his authorized agent directed them to be shipped to New York. The draft was drawn after the cattle were shipped to Chicago. No explanation whatever accompanied it to Keenan & Co. Mulhall insisted that the cattle belonged to Tamblyn, subject to his advances upon them, and that the advances were made and the draft drawn upon the faith of the letter of credit addressed to Mulhall in favor of Tamblyn, which Keenan & Co. had given to the latter. Keenan & Co. claimed that they believed, and, under the circumstances were warranted in believing, that the cattle belonged to Mulhall, and that the draft was drawn solely on his own account. The letter in question was an important link in the plaintiffs' chain of evidence touching this issue. As such, it was clearly com-

petent and proper to be received in evidence.   Its weight and effect, in connection with the other testimony upon the subject, were questions for the jury.    There was no error in this ruling.

Whether it was incumbent upon Mulhall, when the draft was forwarded, to notify Keenan & Co. that it was drawn in pursuance of the letter of credit, and that the cattle were Tamblyn's, is a point not raised and upon which we need, therefore, say nothing.*

The third assignment remains to be considered. . It relates to the admission of testimony as to the margins.

The letter of credit authorized Mulhall " to make advances on any stock consigned " by Tamblyn to Keenan & Co., and to " draw sight or time drafts when there was sufficient margin."   The limits within which the authority to draw was given, were thus distinctly marked.   Beyond them it did not subsist, and Keenan & Co. were in no wise liable to the drawer.   The case presented four questions:

Whether the draft was drawn by Mulhall for his own account.

If not, whether he was estopped from denying that it was so drawn.

Whether it was drawn in pursuance of the letter of credit.

If so drawn, whether there was such margin in respect to the value of the cattle, as conformed to the requirement of the letter of credit, and made it obligatory on Keenan & Co. to pay the draft.

In the view presented by the last inquiry, the testimony was clearly admissible.

This is not denied by the counsel for the plaintiff in error; but it is insisted that this phase of the case took the defendant and his counsel by surprise, and that they did not come to the trial prepared to meet it.

It is insisted further, that this proposition is not consistent with the bill of particulars filed with the declaration.   The bill of particulars is made up of the debit of the draft in

* Lent v. Padelford, 2 American Leading Cases, note, 59 and post.

question, sundry credits, and the balance claimed by Keenan & Co. It is alike consistent with either phase of the case. If the plaintiffs were entitled to recover in any view of the facts to be developed upon the trial, the amount to be recovered was thus shown. The ground or grounds upon which the recovery was to be insisted upon were in nowise indicated. That was not the purpose of the paper. If there were surprise, the only remedy for it was a motion for a new trial. Such a motion was made, supported by the affidavits of Mulhall, his counsel, and others, and was overruled by the court. With that motion and its result we have nothing to do. They cannot be made the subject of review by this court. Our duty is to ascertain whether there is any error in the record of which we can take cognizance. We have found none, and the judgment is

AFFIRMED.