BERRY, Appellant, vs. DIRECTOR GENERAL OF RAILROADS, Respondent.

*December 15, 1920—March 8, 1921.*

*Railroads: Federal employers' liability act: Inspection of cars received by one carrier from another: Negligence.*

1. The federal employers' liability act of April 22, 1908 (35 U. S. Stats. at Large, 65, ch. 49), does not require a carrier receiving cars from another carrier to sever integral parts of a car in order to discover possible decay or corrosion within, and a failure to so do does not render the carrier liable for an injury to an employee caused by a hidden defect.
2. A railroad company is not bound to inspect cars for defects when they are delivered to a car repairer for restoration; and though he was injured when the transom on which rest the sills of a refrigerator car fell, the car having been jacked up preparatory to the removal of the transom, there can be no recovery under the federal act, notwithstanding the sills and bolts holding the transom were defective.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

Action under the federal employers' liability act to recover for personal injuries sustained by plaintiff while repairing a car engaged in interstate commerce. The car belonged to the Northern Pacific Railway Company, and while in defendant's possession as operator of the Chicago & Northwestern Railway Company during the government's control thereof needed radical repairs because the drawbar had been pulled out, one of the draft timbers was missing, and a piece was broken off from the end of the other one. One sill to which the draft timber was attached was broken off and the other one was split a little. Plaintiff, who was a piece

worker, was required to repair the center sills and draft
timbers.    The description of the car is thus summarized by
counsel for plaintiff:

"This refrigerator car consisted of the usual wooden box
or body resting on front and rear trucks.    The floor of this
car was laid on 6 x 9 wooden sills running parallel and
lengthwise.    There were six of these sills laid as follows:
one running along each side, called the side sills; two run-
ning down the center, called the center sills; and one be-
tween each of the side and center sills, called the intermediate
or intersills.    The floor was laid on these sills much like
boards are nailed onto stringers in a board walk.    Under the
two center sills and bolted up tight against them were two
draft timbers about 6 x 10 extending beyond the ends of the
car, and onto the ends of which the coupler was attached.
The body of the car, instead of resting directly on the trucks,
rests on a transom, the lower end of which has a center-plate
which rests on another center-plate fastened to the truck
bolster.    This transom is made of iron or steel and weighs
from 600 to 1,000 pounds.    The top of the transom on which
the body of the car rests is straight and extends from side to
side of the car.    The sides of the transom slant inward to
the center of the truck where it rests in the truck bolster, so
that when the transom is in position it is somewhat triangu-
lar in shape, the body of the car resting on the upper side of
the triangle and the apex resting in the body bolster of
the truck.    This transom is fastened to the sills by means
of three-fourths inch bolts about sixteen to eighteen inches
long.    It is bolted onto the side sills by what is known
as transom bolts running through each side sill and the flange
of the transom, and body rod bolts running from the top of
the car down through the side sills and the flange of the tran-
som.    Then there is a bolt running through each of the
intersills and the flange of the transom and two center-plate
bolts through each of the center sills and the transom.    Ten
bolts in all.    The heads of the bolts are on the upper side
or top of the sills and the nuts on the under side of the flange
of the transom.    While the draft timbers are bolted onto
the center sills and not onto the transom, they are framed
so that they pass through openings in the transom and there-
by help to give it support.    The space between the sills and
below the regular floor of the car was covered with boards,

thereby making a double flooring, and between these boards and the regular floor was a composition of hair and paper. This. arrangement was called the insulation and was used to prevent the heat from penetrating the car, thereby keeping the temperature in the car at a low degree. This insulation is right across the bottom of the sills, making a solid bottom underneath the sills, so that when you look up at the car from underneath it is a solid floor."

· Plaintiff proceeded to jack up the car, loosen the bolts in the transom sufficiently to permit one end to be lowered so that they could put in splices, and repair the damaged center sills and draft timbers. While in the act of so doing, owing to the decayed or split condition .of the sills or to the corroded threaded ends of the bolts permitting the nuts to slip, or to two or more of these causes combined, the bolts pǎrtly pulled through the center sills and permitted the transom to fall on plaintiff and injure him. Plaintiff claimed defendant was negligent in permitting the car to be sent to plaintiff for repairs in such decayed and split condition; that he should have inspected the car, discovered its true condition, and warned plaintiff thereof. The defendant contended there was no negligence on his part and that the plaintiff assumed the risk. At the close of plaintiff's testimony the court granted a motion for a nonsuit on the ground that plaintiff had assumed the risk, and from a judgment entered accordingly plaintiff appealed.

For the appellant there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Edward J. Gross* and *Robert E. Wild.*

For the respondent there was a brief by *R. N. Van Doren,* and oral argument by *D. E. Riordan,* both of Milwaukee.

The following opinion was filed January 11, 1921:

VINJE, J. The law under which recovery is sought, sec. 1 of the act of April 22, 1908 (35 U. S. Stats. at Large, 65, ch. 49), provides in substance that every common carrier by railroad while engaged in interstate commerce shall be

liable in damages to any person suffering injury while he is employed by such carrier in such commerce where such injury results in whole or in part from the negligence of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, etc. It will be seen that recovery is contingent upon proof of negligence on the part of the carrier. Here the carrier's negligence claimed is the failure to inspect the car, discover the decayed condition of the sills and corroded state of the bolts, and disclose such decayed and corroded conditions to plaintiff before he was set to work upon the car. Discussing the subject upon the question of contributory negligence plaintiff's counsel say:

"After the transom came down it was found that the bolts stripped because of their corroded condition, and the tops of some of the sills were so badly decayed that the bolts pulled through from four to five inches of the decayed matter. Because of the construction of the car as described and the fact that the sills were decayed from above the plaintiff could not by the exercise of ordinary care know of this condition; neither could he know that the bolts were corroded within and above the nuts because they were hidden from view."

The above we think is a fair statement of the situation, though defendant claims there was no decay or corrosion but only a split visible in the sills. Since the sills and bolts were covered above by planks or boards forming the floor of the car, and were also covered below by the insulation, it is apparent that no inspection of the same could be made without taking this part of the car to pieces. We shall not here attempt to state the federal rule as to the duty of one carrier to inspect cars coming to it from another carrier, further than to state that such rule does not require the severing of integral parts of the car in order to discover possible decay or corrosion within. *Nelson v. Southern R. Co.* 246 U. S. 253, 38 Sup. Ct. 233, 62 L. Ed. 699. A rule requiring that would almost wholly arrest interstate commerce. It is therefore apparent that any reasonable

inspection made by defendant would not have disclosed the alleged defect. Hence, no injury resulting in whole or in part from any negligence of the defendant has been shown. Besides, whatever duty defendant owed its employees who were in the active operating service where cars and appliances are presumed to be in a reasonably safe state of repair for such service, it owed no duty to a car repairer, for when cars come to him it is because they are defective and he is to remedy the defect, and in doing so conditions constantly change. *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429; *Brown v. Conners,* 149 Wis. 403, 135 N. W. 857; *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650. In the instant case there is no claim that plaintiff was misled by the directions as to the needed repairs, and it is conceded that he had the choice of method of making them and was furnished adequate tools, appliances, and help for the repairs to be made. Regrettable as the injury to plaintiff is, we find no neglect of duty on the part of defendant and so do not reach or decide the question of plaintiff's assumption of risk.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 8, 1921.