### CHEFFEY v. PENNSYLVANIA R. CO.
#### Civil Action No. 5913.

District Court, E. D. Pennsylvania.
Aug. 11, 1948.

254

The jury found for plaintiff; in answer to interrogatories found that defendant failed to furnish plaintiff with a reasonably safe place to work and that such failure was a cause of the accident; that negligence of the plaintiff contributed to the accident and reduced the total amount of damages, i. e., $10,000, found to have been suffered by the plaintiff as a result of the injuries sustained, by $3500, leaving a net amount of $6500. Although, just as plaintiff was about to rest her case, an amendment was offered and, over defendant's objection,[1] allowed, whereby plaintiff averred negligence of defendant in failing to provide plaintiff with sufficient help, no specific finding upon that ground was requested or made by the jury. We must assume however that in the general verdict the jury also found for the plaintiff on that ground.[2]

When at the close of all the evidence defendant moved for a directed verdict, we reserved ruling and submitted the action to the jury. After the verdict defendant moved for judgment upon its request for directed verdict and in the alternative for a new trial.[3]

As to the motion for judgment notwithstanding the verdict, the facts stated most favorably to plaintiff's case, drawing all reasonably possible inferences going to support the verdict,[4] are as follows:

A. P. R. R. Class X29 box car had been inspected at the Wheeling Steel Corporation plant some four miles away and because of a broken floor and a sill supporting the floor requiring nailing, a card was placed on the side of the car indicating the need for said repairs and ordering the car shopped for repairs. The car was moved to the car repair shop and spotted on the outside track. It was again inspected at the repair shop by defendant's foreman and another card prepared showing the nature of the repairs required.

Elias Magil, of Richter, Lord & Farage, all of Philadelphia, Pa., for plaintiff.

Theodore Voorhees, of Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., for defendant.

MURPHY, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, for damages for injuries sustained by plaintiff, a resident and citizen of Brilliant, Ohio, while employed on October 8, 1945, in interstate commerce at defendant railroad's Mingo Junction Ohio Car Repair Shop.

---

[1] Scott v. Baltimore & O. R. Co., 3 Cir. 1945, 151 F.2d 61, 63. Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A. following section 723c.

[2] Skidmore v. Baltimore & O. R. Co., 2 Cir.1948, 167 F.2d 54; Sparf & Hanson v. United States, 1895, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343.

[3] Federal Rules of Civil Procedure, Rule 50(b).

[4] Eckenrode v. Pennsylvania R. Co., D. C.E.D.Pa.1947, 71 F.Supp. 764; Eckenrode v. Pennsylvania R. Co., 3 Cir.1947, 164 F.2d 996, certiorari granted 68 S.Ct. 790.

The box car was 40 feet, 6 inches in length inside; on each side was a 6-foot door. From the door frame to the nearest end of the car inside was 17 feet, 3 inches. The floor was broken so that there was a hole "just inside the door and a little bit to the right," one foot from one of the door frames toward the end of the car. The hole was 12 to 15 inches wide, 18 to 27 inches long. There was nothing to prevent the hole from being seen by anyone who looked in that direction. Both 6-foot doors were wide open. The day of the accident was a clear dry October day.

Every car sent to the repair shop was sent for repairs of some kind. All were repaired and cleaned out so as to be fit for resuming revenue service. It was customary to have the cars cleaned out before they were repaired. The inspection of the cars on this occasion, and thereafter placing a tag on the side of the car or the car door showing what repairs were required, was the usual, customary practice.

In the car at one end there were some steel bands, the kind used for holding steel in place when being shipped. Those bands, 30 to 50 of them, varied in length from 5 to 10, 12, and 15 feet, 1½ inches wide, ⅛ inch thick in center, ⅟₃₂ inch thick on the edges. The 15-foot band weighed approximately 5 pounds; the short bands "hardly weighed anything." The nearest end or portion of any of the bands from the door of the car was 10 to 12 feet so that all the bands were in an over-all space of 5 to 7 feet; they were not laying flat on the floor but "all doubled up," and bent so that the pile was knee high. The remainder of the floor, 33 to 35 feet in length, was clear of debris. The bands were at one end of the car; the hole 17 to 19 feet away on the other end of the car.

Plaintiff, a forty-six year old woman, had worked two years at defendant's car shop as a laborer and later as a carman's helper and was on October 8, 1945, the day of the accident, employed in interstate commerce. She had cleaned out cars on many prior occasions and was familiar with the work of cleaning out metal bands. Plaintiff knew that every car on the repair track was sent in for some kind of repair. In every case before entering the car she looked at the card on the car to ascertain the repairs required in order to know what to be careful about. Mr. Mathieu, defendant's foreman, directed plaintiff to clean out the car in question. She looked at the card on the side of the car, noted the repairs required, knew the floor was broken but not precisely where the hole was. She climbed a ladder, entered the car through an open door. From that position the hole was 5 to 6 feet away to her right, while to her left 10 or 12 feet away was the closest end or portion of the steel bands. She did not look about to see where the hole was but proceeded to the pile of bands, picked up 5 or 6 short pieces, returned to the door and threw them out. While walking toward the door she did not look toward the direction of the hole or look around to see where the hole was. She returned to the pile; while on some prior occasions she picked up 2 or 3 long pieces at a time, she next took hold of the end of one band and proceeded walking backwards pulling the band in the direction of the open door, continuing to walk backwards past the open door until her left foot went down through the hole, her right foot following so that she landed violently in a sitting position on the car floor, her left foot resting upon the pipe beneath the floor. At no time, either before she started pulling the metal band or while she was pulling it, did plaintiff look to see where the hole was, or, while walking backwards, to see where she was going either by stopping to look or, while walking, to look over her shoulder. Plaintiff knew the company had a rule which forbade walking backwards, but plaintiff states she was afraid that the other end of the metal band would become caught on the floor or nails, etc., and if it did it would when loosened spring as high as her head; that as a result she concentrated her attention on the other end to avoid being hurt and therefore did not look where she was going. Furthermore, says plaintiff, on other occasions two persons were sent to do this work. Sometimes they worked together in pulling the bands out; sometimes one on each end. They had worked both ways. When there was one on each end, one would pull and walk forward while the

other person watched the other end of the band to prevent its becoming caught and later springing. On this occasion no helper was assigned. While she was sitting on the floor she first examined the hole.

In rebuttal, just as the case was about to close, plaintiff named five persons who had been assigned with her on previous occasions to clean out such bands from box cars.

Plaintiff's theory of recovery was first based upon the charge of failure to provide a safe place to work. The evidence showed that the customary practice was followed in inspecting the car, placing a card on the side of the car noting the repairs required, shopping it for repairs, later in inspecting the car on the repair track and tagging it accordingly, and in ordering that the car be cleaned out before sending repairmen in to make the repairs. Plaintiff knew every car on the repair tracks was there for repairs. Her work was to help the repairmen. She also knew about the broken floor before she entered the car. There was no evidence to show any safer way to repair cars.

This is obviously not a case where a claim is made of any defect, deficiency or insufficiency in the car, as such; cf. Section 1 of the Act, 45 U.S.C.A. § 51, with Section 6 of the Safety Appliance Act, 45 U.S.C.A. § 6, and see Note 39 thereto; but is based upon a claim of negligence in furnishing the car in such condition as a place of work. The stringent liability of the Safety Appliance Act is missing. Myers v. Reading Co., 1947, 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615. There is no evidence of failure to inspect, no claim of negligence as to what caused the hole to be in the car, in shopping it, or in ordering that it be repaired. A railroad must have repair shops and its cars must be repaired.

We have here not a hidden defect or danger but a perfectly obvious hole in the floor of a car, shopped for the purpose of repairing that hole, and an injury to a car repairman's helper who, knowing of the existence of the hole, is sent to clean out debris from the car so that the repairs may be made and the car returned to revenue service.

Defendant cites Houston's Adm'x v. Seaboard Air Line Ry., 1918, 123 Va. 290, 96 S.E. 270, 272; Berry v. Director General of Railroads, 1921, 173 Wis. 473, 180 N.W. 824, to the effect that "The rule that it is the duty of the master to use ordinary care to provide a reasonably safe place in which the servant is to work does not generally apply where the servant is sent to make repairs in order to render the place safe." On the contrary, we think the correct rule is stated in Terminal R. Ass'n of St. Louis v. Howell, 8 Cir. 1948, 165 F.2d 135. Generally a master must furnish his employee a safe place to work. Bailey, Adm'x v. Central Vermont Ry. Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Ellis v. Union Pacific R. Co., 1947, 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 433.

The right of action under this Act is a federal right, the interpretation of the Act is a matter of federal law and not governed by state decisions even when it speaks in the words of the common law. Chesapeake & O. R. Co. v. Kuhn, 1931, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157; Ricketts v. Pennsylvania R. Co., 2 Cir. 1946, 153 F.2d 757, 759, 164 A.L.R. 387; Ellis v. Union Pacific R. Co., supra, 329 U.S. at page 653, 67 S.Ct. at page 600, 91 L.Ed. 572. The federal courts do not apply the test as rigorously as defendant contends. (For an analogy in the application of the assumption of risk doctrine, see Blair v. Baltimore & O. R. Co., 1945, 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490.) The rule applicable is the requirement to exercise reasonable or ordinary care under the circumstances. Tiller, Ex'r, v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, "* * * the employer is not held to an absolute responsibility for the reasonably safe condition of the place * * * but only to the duty of exercising reasonable care to that end. * * *" Baltimore & O. S. W. R. Co. v. Carroll, Adm'x, 1930, 280 U.S. 491, 496, 50 S.Ct. 182, 183, 74 L.Ed. 566.

"It was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The com-

mon-law rule is that an employer is not a guarantor of the safety of the place of work * * *; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed * * * may be safe for the workmen." Seaboard Air Line R. Co. v. Horton, 1914, 233 U.S. 492, 501, 34 S.Ct. 635, 639, 58 L.Ed. 1062, L.R.A. 1915C, 1, Ann.Cas.1915B, 475.

And again more recently, "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." Ellis v. Union Pacific R. Co., supra [329 U.S. 649, 67 S.Ct. 600]; Myers v. Reading Co., 1947, 331 U.S. 477, 485, 67 S.Ct. 1334, 91 L.Ed. 1615. Nor is the liability of the master the same as in admiralty. Cf. Callen v. Pennsylvania R. Co., 1948, 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. ——.

"* * * A fair generalization of the rule is * * *: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.'" Tiller v. Atlantic Coast Line R. Co., supra, 318 U.S. at page 67, 63 S.Ct. at page 451, 87 L.Ed. 610, 143 A.L.R. 967.

The duty to provide a safe place to work is a relative one and that duty becomes more imperative as the risk increases. In all cases it is a question of the reasonableness of the care—reasonableness depending upon the danger attending the place of work. Bailey v. Central Vermont R. Co. Inc., supra, 319 U.S. at page 353, 63 S.Ct. at page 1064, 87 L.Ed. 1444; Ellis v. Union Pacific R. Co., supra; see Labatt on Master and Servant, 2d Ed., Vol. 3, Section 924; Terminal R. Ass'n of St. Louis v. Howell, supra.

In McGivern v. Northern Pac. R. Co., 8 Cir. 1942, 132 F.2d 213, at 218, the court applied the test that "The employer is not required to furnish the newest or even the safest and most approved devices if the employee is not deceived as to the degree of danger to which he is subjected. * * * These instrumentalities were in general use and met with general approval for the performance of this work"; and again "* * * While custom or usage may not be controlling as fixing the standard of care it may be accepted where the custom or practice is not in itself negligent or in disregard of the safety of the employee." Other cases have applied a more severe test, e. g., Boston & M. R. R. v. Kyle, 1 Cir. 1946, 156 F.2d 112, "* * * although the latter directed that their work be done in the usual or customary way, there was a safer way in which it could have been done which was sometimes adopted in the defendant's shop, and that, if this safer method * * * had been followed, the injury * * * would not have occurred." And again in Boston & M. R. R. v. Meech, 1 Cir. 1946, 156 F.2d 109, 111, certiorari denied 329 U.S. 762, 67 S.Ct. 124, 91 L.Ed. 658, "It may be that the locomotive was being operated in the way usual and customary * * * nevertheless the fact remains that it could have been operated more carefully."

Palum v. Lehigh Valley R. Co., 2 Cir. 1948, 165 F.2d 3 at 5, "It is possible that in former times it would not have been regarded as negligent * * * but, under the recent rulings of the Supreme Court, we cannot say that it was beyond reason for a jury to find that it was negligent. * * * It would certainly have been safer * * * and there was evidence indicating that this safer method, if not invariably practised, was generally employed. In such circumstances we think it was required by the recent decisions of the Supreme Court to leave to the jury the question of whether that safer method should not have been chosen." Chicago & N. W. R. Co. v. Grauel, 8 Cir. 1947, 160 F.2d 820, 826, "Guided by our interpretation of the cases lately decided by the Supreme Court, we cannot say that the verdict of the jury * * * is without substantial basis in the evidence."

As to the Seventh Circuit see Griswold v. Gardner, 7 Cir. 1946, 155 F.2d 333, but see Myers v. Reading Co., supra. See, however, Trust Co. of Chicago v. Erie R. Co., 7 Cir. 1948, 165 F.2d 806, 810, certiorari denied 68 S.Ct. 1513; in other cases, "there was some evidence of negligence shown or

conflicts in the evidence as to negligence which the jury might have to resolve, and in the resolution of which the jury might have to speculate, as suggested in Lavender v. Kurn, supra [327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916]. But here where there is no conflict and a total failure of proof, the jury would have no probative evidence on which to base its verdict and would have to substitute speculation, which it may not do, as the Court said in Galloway v. United States, supra [319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458]."

Similarly in Eckenrode v. Pennsylvania R. Co., 3 Cir. 1947, 164 F.2d 996, and in Fantini v. Reading Co., 3 Cir. 1944, 147 F. 2d 543, certiorari denied 325 U.S. 856, 65 S. Ct. 1185, 89 L.Ed. 1976, verdicts were directed where there was a failure by plaintiff to present any evidence from which negligence in whole or in part and proximate cause could reasonably be inferred.

 Notwithstanding the invariable custom and without evidence to the contrary, plaintiff's counsel contends it was negligence to send the plaintiff to clean the car before it was repaired, and again in the failure of the foreman to point out to plaintiff the precise location of the hole. Plaintiff was bound to exercise ordinary care and prudence to avoid injury to herself. Defendant was not obliged to anticipate or foresee that plaintiff would walk backwards and fail to look where she was going. To hold that under the circumstances defendant's alleged failure on this ground was negligence would be unreasonable. This case is unlike Terminal R. Ass'n etc. v. Howell, supra, because there the evidence showed a hidden danger, superior knowledge in the foreman, and a failure to warn. Here there was an obvious hole, apparent as well to plaintiff, an experienced helper, as to the foreman. In view of the ruling in Brady v. Southern R. Co., 1943, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, we feel on this ground plaintiff did not meet the test as stated in Tennant v. Peoria & P. U. R. Co., 1944, 321 U.S. 29, 32, 64 S. Ct. 409, 411, 88 L.Ed. 520, and Myers v. Reading Co., supra, in that she failed to present "probative facts from which * * * negligence and * * * causal relation could reasonably be inferred." We are therefore of the opinion that the question of defendant's alleged failure to furnish a safe place of work should not have been submitted to the jury.

 As to plaintiff's second ground—generally an employer has a duty to furnish his employee reasonably sufficient help. Blair v. Baltimore & O. R. Co., supra; Labatt op. cit. supra, Section 1107; Chesapeake & O. R. Co. v. Winder, 4 Cir. 1928, 23 F.2d 794; Albright v. Pennsylvania R. Co., D.C.M.D.Pa.1936, 16 F.Supp. 281; Deere v. Southern Pac. Co., 9 Cir. 1941, 123 F.2d 438, certiorari denied 315 U.S. 819, 62 S.Ct. 916, 86 L.Ed. 1217. Defendant's failure in this regard must be not only negligence but also the proximate cause of the injury. Deere v. Southern Pac. Co., supra.

 On this motion we must assume two persons were assigned on all previous occasions; that there was danger of the pieces springing into the air if the end was caught; that there was danger to plaintiff requiring her to watch carefully thus distracting her attention from her surroundings; that plaintiff pulled one piece at a time and walked as she indicated. In other words, we must not weigh the evidence or consider the contradictory and conflicting evidence, and must give to plaintiff every inference which might reasonably be drawn therefrom. As to plaintiff's contributory negligence, unless it was the sole cause of the injury it can be considered only in reducing the amount of the recovery. 45 U.S.C.A. § 53; Eiseman v. Pennsylvania R. Co., 3 Cir. 1945, 151 F.2d 222. The defendant would be liable if its negligence was only "in part" responsible.

While we have found no negligence as to the place of work, as such, we cannot in the light of the decisions heretofore discussed, there being evidence of a safer method than that employed, say that it would be unreasonable for a jury to find that plaintiff's negligence was not the sole cause of the accident. The jury could well have considered her conduct as a contributing rather than a superseding cause. Palum v. Lehigh Valley R. Co., supra.

 Galloway v. United States, supra, 319 U.S. at page 395, 63 S.Ct. at page 1089, 87 L.Ed. 1458, states that in deter-

mining the measure of evidence necessary to sustain the burden of plaintiff in a given case "The matter is essentially one to be worked out in particular situations and for particular types of cases." As to this type of case, the Supreme Court decisions emphasize that the scope of jury inference must be liberally and not narrowly viewed. Lukon v. Pennsylvania R. Co., 3 Cir. 1942, 131 F.2d 327 at page 329; Chicago & N. W. R. Co. v. Green, 8 Cir. 1947, 164 F.2d 55 at page 59. Applying that test we cannot find error in submitting this question to the jury.

Although there was no specific finding by the jury as to this ground, we must consider it as being included in the general verdict. Defendant's motion for directed verdict will therefore be denied.

■ In considering the motion for a new trial a different test must be applied. Here we must consider the testimony as a whole and weigh the evidence. Defendant contends that to assign two persons under the circumstances related by plaintiff, i. e., one person on each end of a band, would not be the exercise of reasonable or ordinary care, but, on the contrary, dangerous. Further, that it was a relatively small, light job, there being only 25 to 30 pieces, 5 or 6 small pieces of which were thrown out by plaintiff on her first trip; the remainder, all bent and "doubled up" were in a 5 to 7 foot space at the end of the car; if there was a large quantity or a time factor involved, two persons would be assigned, depending upon the labor supply, but that this decision was in no manner based upon a safety element. In fact, says defendant, plaintiff admitted on the stand that where two were assigned they sometimes worked separate ends of the car and at other times "pulled together". Defendant's foreman said he not only told plaintiff there was a hole in the car but also told her to be careful.

Defendant moves for a new trial on the ground that the verdict was against the evidence and the weight of the evidence, and that the amount of the verdict was pure speculation and not based on the evidence before the jury.

■ After ten days, defendant, as an additional ground for a new trial, submitted five statements, not in affidavit form, one each from the persons named by plaintiff as having previously assisted her; the statements being to the effect that the work was not done and that those persons had never worked as plaintiff indicated. Because defendant did not comply with the requirements of the Federal Rules of Civil Procedure, rule 59 (b, c), 28 U.S.C.A. following section 723c, we cannot consider the contents of such statements but must determine defendant's motion as if the statements had not been presented.[5]

■ There was no mention in the complaint or in plaintiff's deposition of the need of a helper or of defendant ever having furnished a helper on previous occasions. When the idea of a helper was first mentioned by plaintiff it was offered to show failure to furnish a safe place to work; later to negative contributory negligence, and finally, when plaintiff was about to rest her case, as a separate ground of negligence. Of course, plaintiff can move to amend to conform to the proof offered at the trial.[6] Here, however, defendant objected to the amendment at such a "late hour" in the proceedings, defendant having had no warning or notice that it would be obliged to meet such a question, particularly in view of a previous order of court requiring rather complete discovery. Whereupon, plaintiff's counsel stated, "As far as notice is concerned, or ability to defend at this point against it, the defendant, I believe, has in court the same people who would testify on that issue as are or were required to testify on the issues previously

---

[5] Plaintiff did not comply with Rule 59 (b) as to time or 59(c) as to affidavits, notice and a hearing. See McHugh v. Audet, D.C.M.D.Pa., 72 F.Supp. 394; Teller v. Athens Stove Works, Inc., 1946, 7 F.R. D. 88; Cudahy Packing Co. v. City of Omaha, 8 Cir.1928, 24 F.2d 3 at page 7; cf. Alcaro v. Jean Jordeau Inc., D.C.N.J., 3 F.R.D. 61.

[6] See footnote 1. In this connection see Mulhall v. Keenan, 18 Wall. 342, 350, 85 U.S. 342, 350, 21 L.Ed. 808, "If there were surprise, the only remedy for it was a motion for a new trial"; Weiss v. United States, 5 Cir.1941, 122 F.2d 675, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L. Ed. 550.

260

squarely raised " (N.T. 113). Defendant did not press his plea of surprise and request a continuance. On direct testimony plaintiff intimated Mr. Mathieu had assigned help to her on previous occasions. Mathieu denied it. It was not until after defendant had closed its evidence that plaintiff was called as in rebuttal and then for the first time testified that two others, not in court, had asigned help to her previously, and named five persons, not in court, who had been thus assigned.

The jury in its verdict apparently considered plaintiff as having been permanently injured and allowed damages therefor, notwithstanding one of plaintiff's doctors said there was no connection between plaintiff's physical condition at the time of the trial and the injury (N.T. 85). The other physician testified (N.T. 96), "She may have had aggravation by something else that I know nothing about * * *."; that if she had taken a few more treatments as recommended by him her discomfort would have been removed, and at all events that plaintiff's distress and discomfort should not last more than approximately six months after the accident. Plaintiff resumed work on the day of the accident and continued working, with few exceptions, everyday for a period of approximately two months. On direct examination of plaintiff by her own counsel the record (N.T. 44) shows the following:

"Q. How do you feel? Have you recovered completely? A. Yes, sir."

 "Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guarantee of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice." Garrison v. United States, 4 Cir., 1932, 62 F.2d 41, 42. "The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right." Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 1941, 122 F.2d 350, 353; United States v. Robinson, D. C. Dist. of Col., 1947, 71 F.Supp. 9; Adams v. United States, 7 Cir., 1940, 116 F.2d 199, 202; Mt. Adams & E. P. Inclined R. Co. v. Lowery, 6 Cir., 1896, 74 F. 463, 470. In the latter case In 74 F. at page 471, the case of Norris v. Freeman, 3 Wils. 39, is cited for the proposition: " 'There are many cases where the court will grant new trials notwithstanding there was evidence on both sides, as where all the light has not been let in at the trial which might and should have been.' "

" * * * so long as the law is that the defendant must be negligent for the plaintiff to recover for his injuries it is our responsibility to apply the negligence test honestly * * *." Eckenrode v. Pennsylvania R. Co., supra, 164 F.2d at page 1000.

 Because we feel that the verdict was against the evidence and the weight of the evidence, and feeling that "all the light has not been let in at the trial which might and should have been", a new trial will be awarded.