# LOUIS H. NETZER v. NORTHERN PACIFIC RAILWAY COMPANY.[1,2]

February 20, 1953.

No. 35,664.

---

[1]Reported in 57 N. W. (2d) 247.
[2]Certiorari denied by U. S. Supreme Court October 12, 1953.

*William A. Tautges, Eugene A. Rerat, Hilding A. Swanson, Harry H. Peterson,* and *John Ott,* for appellant.

*M. L. Countryman, Jr., Earl F. Requa,* and *Dell, Rosengren & Rufer,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action under the federal employers' liability act (35 Stat. 65, c. 149, as amended by 36 Stat. 291, c. 143, and 53 Stat. 1404, c. 685

[45 USCA, § 51, *et seq.*]) for personal injuries sustained December 25, 1948, when plaintiff fell from the brake platform of one of defendant's boxcars at the latter's yards in Missoula, Montana.

At the close of the trial, plaintiff requested instructions with respect to the applicability of the federal safety appliance act, 45 USCA, § 11, which provides:

"It shall be unlawful for any common carrier * * * to haul, or permit to be hauled or used on its line, any car * * * not equipped with * * * efficient hand brakes; * * *."

Thereunder plaintiff requested that the jury be charged that it was unlawful for a common carrier to permit to be hauled or used on its line any car not equipped with efficient hand brakes; that as a matter of law the car from which plaintiff fell was being used on defendant's line at the time of the accident; and that, if the hand brake thereon was not efficient at the time and such deficiency was the proximate cause of the accident, defendant was liable to plaintiff by virtue thereof. In the alternative, plaintiff requested that the jury be instructed to determine whether the car was being used on defendant's line at the time of the accident, and that, if so, it was the absolute duty of defendant to have it equipped with an efficient hand brake. Both requests were refused.

Thereafter the case was submitted on the issues of defendant's negligence and plaintiff's contributory negligence with appropriate instructions that under the federal employers' liability act plaintiff's contributory negligence would not bar his recovery but would diminish his damages in proportion to the amount his negligence contributed thereto. The jury returned a verdict in favor of defendant. This is an appeal from the order denying plaintiff's motion for an order setting aside the verdict and granting a new trial.

On appeal plaintiff contends (1) that the trial court erred in refusing to give either of the requested instructions above set forth and in refusing to give certain other instructions requested by plaintiff; (2) that the issues of negligence and contributory negligence were not properly submitted to the jury; (3) that the court erred

in certain of its instructions; and (4) that the court erred in rejecting certain evidence submitted by plaintiff in rebuttal.

The car from which plaintiff fell, as part of one of defendant's freight trains, had been en route west to Trentwood, Washington, with a full load of sulphur. Upon arrival of the train at Missoula, Montana, the car was inspected and found to have defective wheels. It was detached from the train and taken to what is known as a "rip track" so that the defective wheels could be removed and replaced by wheels in good condition. Before cars can enter upon this track for repairs or be removed from it after repairs have been made, the switches thereto must be unlocked. It is used for heavy repair work, such as changing wheels and couplings. Together with other repair tracks, it is located at the east side of defendant's yards and extends into a building used for making heavy repairs in inclement weather.

Plaintiff was a step-up car repairman. He had worked in this capacity and as a car repairman's helper for six years. It was the duty of car repairmen to make car repairs, such as the one here involved. Testimony was submitted that it was the custom and practice to check all safety appliances and other devices on cars placed upon rip tracks for repairs after the specific repairs ordered thereon had been completed and before such cars could be removed from the rip track. Such inspections on regular workdays were made by safety appliance inspectors, who were car repairmen assigned for this special work. Testimony was submitted that on Sundays and holidays, in their absence, car men assigned to make repairs were required to perform this duty following their completion of the specific repair ordered.

On Christmas Day, December 25, 1948, plaintiff and Rufus B. Bailey, another car repairman, had been directed to remove the defective wheels from the car here in question and to replace them with wheels in good order. To accomplish this, Bailey went under the car to disconnect the top rod from the truck lever so the car might be raised. Finding that because the hand brake had not been released he could not withdraw the top rod pin, he asked plaintiff

to go to the brake platform to release this brake. Plaintiff testified that when he reached the platform he found the brake release lever in "set" position; that he shoved it to the release position but the brake did not release; that he then took hold of the brake wheel and worked it clockwise to get it loose, keeping his left hand on the "grab-iron" while he did so but that the brake still did not release; that he tried a third time to release it by working the brake wheel downward and that it still did not release; and that he was about to give it another pull when the wheel suddenly turned clockwise and threw him violently to the ground, where he sustained the injuries for which this action was brought.

Shortly after the accident, the hand brake was inspected and operated by a number of defendant's employes who were familiar therewith. All of them testified that it was free from defects and operated efficiently and properly. Testimony was submitted that all hand brake wheels spin when the brake is released; that the grab-iron placed near the brake on the top of the car is there for the purpose of permitting a person to hold on thereto with his left hand while operating the brake wheel with his right; and that if a man holds on to the grabiron there is no danger of the wheels striking him or in the operation of the brake. Plaintiff and others testified that if a brake is in good working order it will release when the brake lever is turned to the release position. Plaintiff denied that he was not grasping the grabiron at the time of the accident.

It is defendant's contention that the federal safety appliance act has no application here as the car was not in use on defendant's line at the time of the accident and also that there is no evidence sufficient to support a finding of negligence against it.

■ We are of the opinion that the trial court did not err in holding that § 11 of the federal safety appliance act had no application here. It is undisputed that the car from which plaintiff fell had been removed from the train and placed on a repair track which was under lock and which was located in defendant's repair yards separate and apart from its other tracks. It has been held uniformly that a car thus withdrawn from "use" for the purpose of being re-

paired is not covered by the federal safety appliance act. Kaminski v. C. M. St. P. & P. R. Co. 180 Minn. 519, 231 N. W. 189, certiorari denied, 282 U. S. 872, 51 S. Ct. 78, 75 L. ed. 770; B. & O. R. Co. v. Hooven (6 Cir.) 297 F. 919; Lyle v. Atchison, T. & S. F. Ry. Co. (7 Cir.) 177 F. (2d) 221; Sherry v. B. & O. R. Co. (6 Cir.) 30 F. (2d) 487, certiorari denied, 280 U. S. 555, 50 S. Ct. 16, 74 L. ed. 611; New York, C. & St. L. R. Co. v. Kelly (7 Cir.) 70 F. (2d) 548, certiorari denied, 293 U. S. 595, 55 S. Ct. 110, 79 L. ed. 689; McCalmont v. Pennsylvania R. Co. (6 Cir.) 283 F. 736; Compton v. Southern P. Co. 70 Cal. App. (2d) 267, 161 P. (2d) 40; Atlantic Coast Line R. Co. v. Edge, 81 Ga. App. 606, 59 S. E. (2d) 533.

The Kaminski case, *supra,* definitely commits this court on this issue. There, a defective car had been placed on a stripping track so that its defective parts might be removed. Later, while it was being removed to another track for additional repairs, plaintiff sustained the injuries for which the action was instituted. In holding that the car was not being "used" within the provisions of the federal safety appliance act, this court said (180 Minn. 524, 231 N. W. 191):

"We reach the conclusion that where a bad order car has been withdrawn from service and taken to and placed in a repair yard where it is being repaired, subsequent movements of the car made in the course of the work and for the purpose of facilitating it are not within the operation of the safety appliance act."

■ Cases cited by plaintiff holding the federal safety appliance act applicable relate to accidents which occurred while a car was being switched in the yards, while it was in the process of being removed to a repair track, or while it had been placed on a siding as distinguished from a repair track. Brady v. Terminal R. Assn. 303 U. S. 10, 58 S. Ct. 426, 82 L. ed. 614; M. St. P. & S. S. M. Ry. Co. v. Goneau, 269 U. S. 406, 46 S. Ct. 129, 70 L. ed. 335; G. N. Ry. Co. v. Otos, 239 U. S. 349, 36 S. Ct. 124, 60 L. ed. 322; Delk v. St. Louis & San Francisco R. Co. 220 U. S. 580, 31 S. Ct. 617, 55 L. ed. 590; Philadelphia & R. Ry. Co. v. Auchenbach (3 Cir.) 16 F. (2d) 550; C. M. & St. P. Ry. Co. v. Voelker (8 Cir.) 129 F. 522, 70 L. R. A. 264;

Erie R. Co. v. Russell (2 Cir.) 183 F. 722; Clapper v. Dickinson, 137 Minn. 415, 163 N. W. 752; McNaney v. C. R. I. & P. Ry. Co. 132 Minn. 391, 157 N. W. 650. The facts in the instant case do not bring it within any of the principles set forth in the cited cases.

New Orleans & N. E. R. Co. v. Jackson, 140 Miss. 375, 105 So. 770, relied upon by plaintiff, appears in conflict with the majority of decisions on this issue. In support of the conclusion therein, the Mississippi court cites G. N. Ry. Co. v. Otos, *supra;* Delk v. St. Louis & San Francisco R. Co. *supra;* and Texas & P. Ry. Co. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. ed. 874, each of which involved a car not yet arrived at its repair track.

■ Plaintiff contends that because the car was loaded with sulphur and consigned to a consignee in Trentwood, Washington, it must be held to have been in use in interstate commerce and, hence, within the provisions of § 11. Such facts, however, do not appear to be controlling on this issue. Thus, McCalmont v. Pennsylvania R. Co. *supra,* involved a loaded car, but the decision was governed solely by the fact that it was held to be out of use on defendant's line while on a side track awaiting transfer to the repair track for repairs. New Orleans & N. E. R. Co. v. Jackson, *supra;* G. N. Ry. Co. v. Otos, *supra;* and Delk v. St. Louis & San Francisco R. Co. *supra,* involved loaded cars, but the governing factor in these cases was not that the cars were loaded or consigned but rather that they had not arrived at the repair tracks at the time of the accidents.

■ The trial court instructed the jury that:

"* * * if you also find that the place of plaintiff's work was unsafe or the instrumentalities with which he was required to work were defective because plaintiff himself failed to perform his duty under his employment, and through no fault on the part of the defendant, its agents and employees, other than plaintiff, then defendant cannot be held liable for any injuries resulting on account thereof."

Plaintiff asserts that this was erroneous because there was no duty on his part to provide and maintain for himself either safe instrumentalities or a safe place to work and because no duty rested upon

him to inspect or repair the hand brake prior to completing the specific repairs which he had been ordered to make. L. R. Endres, "writer-up" man for defendant, testified that on Sundays and holidays, in addition to making repairs ordered, car repairmen were required to do a complete inspection job on the cars on which they were working on the repair track—"handbrakes and safety appliances included." Rufus B. Bailey testified that after a repair job such as this they were required to look over the car for additional defects and repair any then discovered. John W. F. Redmond, a foreman for defendant, testified that on Sundays and holidays men assigned to make car repairs also had to inspect such cars for other defects. C. L. Dow testified that car repairmen directed to make a specific repair were also required to go over the car from top to bottom and check all safety appliances and repair any one found defective. While plaintiff denied that any such obligation rested upon him, there would be ample support for a finding against him on this issue if the jury chose to believe the testimony of defendant's witnesses.

It has frequently been held that the obligation of a carrier to an employe charged with the responsibility of inspecting or of making repairs to a defective car does not include that of advising him of the exact condition of the car or of furnishing him with a car free from defects and equipped with appliances in good order. Bauer v. G. N. Ry. Co. 128 Minn. 146, 150 N. W. 394; Berry v. Director General of Railroads, 173 Wis. 473, 180 N. W. 824; Kansas City M. & O. Ry. Co. v. Wood (Tex. Civ. App.) 262 S. W. 520; Noftz v. B. & O. Ry. Co. (6 Cir.) 13 F. (2d) 389. In the light of the testimony and of the authorities cited, it would appear that the court's instructions as above set forth were not erroneous.

■ Plaintiff requested that the court charge the jury that:

"It was the duty of defendant to exercise reasonable care, to provide and maintain for plaintiff a reasonably safe place of work; to provide and maintain reasonably safe appliances, * * *; to adopt and enforce a reasonably safe plan and method for performance of the work, and to exercise such care as might be reasonably neces-

sary to safeguard plaintiff against unreasonable and unnecessary danger of injury, * * *."

On this question the court charged:

"In determining whether there was negligence at the time of the accident on the part of the defendant, you will keep in mind this rule: The defendant employer is required to exercise ordinary care to see that its employee is furnished with a safe place in which to work and to exercise ordinary care to guard against defects or insufficiency of appliances. The defendant employer is not an insurer of the safety of the place to work nor of any of the instrumentalities with which the employee is required to work. If the defendant has used reasonable care to prevent defective appliances and to provide a safe place to work *and there nevertheless remain risks and dangers incident to plaintiff's employment, and if the plaintiff is injured because of such dangers and without any negligence on the part of the defendant, then defendant is not liable for such injuries.*" (Italics supplied.)

Plaintiff asserts that the latter clause, italicized above, in effect constitutes an instruction on the "assumption of risk" defense which was eliminated by the 1939 amendment to the federal employers' liability act. The instruction given, for the most part, was in conformity with the weight of authority on principles applicable to the issue of negligence under the federal employers' liability act. The rule in such cases is set forth in Seaboard A. L. Ry. v. Horton, 233 U. S. 492, 501, 34 S. Ct. 635, 639, 58 L. ed. 1062, 1069, as follows:

"* * * The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employes is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen."

See, also, Wolfe v. Henwood (8 Cir.) 162 F. (2d) 998, certiorari denied, 332 U. S. 773, 68 S. Ct. 88, 92 L. ed. 357; Reynolds v. Atlantic Coast Line R. Co. 336 U. S. 207, 69 S. Ct. 507, 93 L. ed. 618.

We do not feel that the court's indication that there might be risks and dangers incident to plaintiff's employment, separate and apart from any negligence on the part of defendant, constituted an instruction on the asumption of risk doctrine. No reference thereto was made. It would seem that the court merely sought to convey the idea that risks incidental to employment might arise from factors other than defendant's negligence and might have been the occasion of plaintiff's injuries. For example, a risk might arise from plaintiff's sole negligence,[3] from a latent defect not discoverable by the exercise of reasonable care on the part of defendant,[4] or from defects which plaintiff himself was under obligation to discover and repair.[5] Such risks, incidental to the employment, would not be attributable to any fault of defendant nor impose liability for negligence upon it at common law. The instruction was followed by a repetition of the charge imposing upon defendant the duty to exercise reasonable care. Since negligence must be the basis from which defendant's liability arises, we cannot say that the instruction given was erroneous.

■ In defining "preponderance of the evidence" the trial court instructed the jury that:

"A fair preponderance of the evidence means the greater weight of evidence. That is, to establish a fact by a fair preponderance of the evidence, the evidence must satisfy you that it is more reasonable, more probable, more credible that such fact exists than that the contrary exists. If the evidence is equally balanced on such issue, then the fact has not been established by a fair preponderance of the evidence. If the greater weight of evidence is against such fact, then also that fact has not been established by a fair preponderance of the evidence. But if in any appreciable degree there is greater weight in support of the claim of the party having the bur-

[3]Jacobson v. C. & N. W. Ry. Co. 221 Minn. 454, 460, 22 N. W. (2d) 455, 459.

[4]Jones v. C. St. P. M. & O. Ry. Co. 80 Minn. 488, 83 N. W. 446, 49 L. R. A. 640.

[5]Bauer v. G. N. Ry. Co. 128 Minn. 146, 150 N. W. 394.

den of proof, then that burden has been sustained and that fact has been established by a fair preponderance of the evidence."

Plaintiff asserts that the expression "the evidence must satisfy you," used in the above paragraph and in portions of the charge relating to the weight of evidence and proximate cause placed upon plaintiff a greater burden than was required by law in that it imposed upon him the obligation of *satisfying* the jury that defendant was negligent and that such negligence was the proximate cause of his injury.

Examination of the entire charge, including the court's illustrations of the *preponderance of evidence* rule, convinces us that the jury was not misled by the use of the word "satisfy" or any of its parts. Obviously, the words "if you are satisfied by a fair preponderance of the evidence" and like phrases were intended to convey the same meaning as would have been conveyed had the court said, "if you believe from a fair preponderance of the evidence." We have held the use of such words as "satisfy," "satisfies," or "satisfying," when the use is in conjunction with a detailed and correct instruction of fair preponderance of the evidence, not to be erroneous. See, Hage v. Crookston Trust Co. 199 Minn. 533, 272 N. W. 777; Kramer v. Northwestern Elev. Co. 97 Minn. 44, 106 N. W. 86; Lindsley v. C. M. & St. P. Ry. Co. 36 Minn. 539, 33 N. W. 7.

■ Objection to plaintiff's offer made in rebuttal to prove by medical testimony that at the time of trial his weight was 105 pounds was sustained on the ground that such evidence should have been part of his case in chief. Plaintiff urges that it was admissible because Dr. H. B. Hannah, called by defendant, had testified that about a week prior to the trial upon examination he had found plaintiff's weight to be 130 pounds.

With reference to evidence which may be received in rebuttal in situations of this kind, courts are vested with certain discretionary powers. Plaintiff's physical condition, including any loss of weight due to the accident, was part of his case in chief. While Dr. Hannah's testimony may have been in conflict with evidence submitted by plaintiff, we do not find rejection of plaintiff's evidence so prej-

udicial as to indicate an abuse of discretion so serious as to justify the granting of a new trial. The record discloses ample evidence to support plaintiff's contentions as to his loss of weight, irrespective of the evidence offered in rebuttal.

Plaintiff testified that prior to the accident his weight was 168 pounds and that at the time of trial it had dropped to 108 or 109 pounds. Dr. James E. O'Donnell, called on his behalf, testified that, in his final examination of plaintiff shortly before trial, he had found a great loss of weight. Plaintiff's wife testified that at the time plaintiff was weighed by Dr. Hannah she had noticed the scale indicator moving backward and forward as Dr. Hannah recorded his findings and that during the time plaintiff was being weighed by Dr. Hannah she was holding on to him, a factor which might have added to the weight then recorded. Throughout the trial, plaintiff was present in court and members of the jury had ample opportunity of observing him. It would not have been beyond their capacity to have determined therefrom his approximate weight at the time of trial. Under all such circumstances we do not find error in the rejection of this evidence.

The order appealed from is affirmed.

Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.