*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1405**

Jean A. Swanson,
Appellant,

vs.

Summit Orthopedics, Ltd., et al.,
Respondents.

**Filed July 18, 2016
Affirmed
Reyes, Judge**

Washington County District Court
File No. 82CV135261

Stephen W. Cooper, Stacey R. Everson, The Cooper Law Firm, Chrtd., Minneapolis, Minnesota (for appellant)

Katherine A. McBride, Rodger A. Hagen, LouAnn Lawton, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota (for respondents)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that the district court erred in denying her motion for judgment as a matter of law (JMOL) because the evidence does not support the jury verdict. In

addition, Swanson argues that the district court abused its discretion in denying Swanson's motion for a new trial based on several alleged trial errors. We affirm.

**FACTS**

On August 6, 2009, appellant Jean A. Swanson tripped and fell, fracturing her right leg. She was brought to the emergency room and treated by respondents, Summit Orthopedics, Ltd., and employee Dr. Hartleben, an orthopedic surgeon. On August 7, 2009, Dr. Hartleben performed surgery to repair Swanson's fractured right leg. Swanson alleges that while Dr. Hartleben fixated her right leg, he also fractured her left leg, which was fragile because of polio in her youth. Over the next two days, an x-ray and CT scan were taken of Swanson's left leg. She was diagnosed with a left tibial plateau fracture and her left leg was immobilized with a soft removable splint.

Dr. Hartleben provided post-operative follow-up care for both legs in August, September, October, and November 2009. During these follow-up visits, Dr. Hartleben did not notice any signs of malrotation[1] in Swanson's right leg and believed the fracture was healing well. Swanson complained of nighttime achiness and pain in her left knee area, and difficulties with the fit of the brace on her left leg, but she did not complain of malrotation in her right leg. Dr. Hartleben referred Swanson to physical therapy and expected a follow-up visit when she returned from her out-of-state winter vacation.

_____

[1] According to trial testimony, "malrotation" is bad rotation of the bone fragments.

Swanson attended physical therapy, but alleges that she could not rotate her right leg internally[2] or place weight on it. On March 10, 2010, Swanson returned to Summit Orthopedics and complained of external[3] malrotation of her right hip and foot. Swanson alleges that respondents fixated her right leg in a malrotated position, which affected her mobility.[4] Dr. Biebl, another orthopedic surgeon, evaluated Swanson's right leg, agreed that it was malrotated, and referred Swanson to orthopedic surgeon Dr. Dahl. Subsequently, Dr. Dahl performed surgery on Swanson's right leg to correct the malrotation.

Swanson initiated a medical-malpractice lawsuit against respondents. During a jury trial, the parties presented various experts who opined regarding Swanson's leg malrotation. The jury found that Dr. Hartleben was not negligent in providing treatment to Swanson. Swanson filed a motion for a new trial and for JMOL, both of which the district court denied. This appeal follows.

**D E C I S I O N**

I. **Sufficient evidence supports the jury's verdict and the district court's denial of Swanson's motion for JMOL.**

Swanson argues that the district court erred in denying her motion for JMOL because the evidence does not support the jury verdict. We disagree.

---

[2] According to trial testimony, "internally" is described as rotating inward toward the center of the body.
[3] According to trial testimony, "externally" is described as rotating outward away from the center of the body.
[4] Prior to this surgery, Swanson required a power wheelchair for mobility as a consequence of her post-polio syndrome.

A party may move for JMOL pursuant to Minn. R. Civ. P. 50. JMOL is appropriately granted only in unambiguous cases where the verdict is manifestly contrary to the evidence as a whole or contrary to the applicable law. *Jerry's Enters., Inc., v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) Appellate courts "apply de novo review to the district court's denial of a [r]ule 50 motion." *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009); *see Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d 541, 549 (Minn. App. 2011), *aff'd*, 816 N.W.2d 572 (Minn. 2012). Appellate courts "view the evidence in the light most favorable to the prevailing party." *Bahr*, 766 N.W.2d at 919. The district court's denial of JMOL must be affirmed "if there is any competent evidence reasonably tending to sustain the verdict. . . . and we will not set the verdict aside if it can be sustained on any reasonable theory of the evidence." *Lester Bldg. Sys. v. Louisiana-Pac. Corp.*, 761 N.W.2d 877, 881 (Minn. 2009) (quotation and citation omitted).

A. **Sufficient evidence supports the jury's verdict that Dr. Hartleben was not negligent and did not fixate Swanson's femur in a malrotated position.**

Swanson argues that the evidence compels a finding that Dr. Hartleben was negligent and fixated her femur in a malrotated position because there was not a new fracture, there was no radiographic evidence of post-fixation rotation, and respondents' experts' theories lacked foundation. Swanson's argument is misguided.

Regarding the issue of negligence, a trial court does not err in denying a motion for JMOL where conflicting, credible testimony is offered. *Boschee v. Duevel*, 530 N.W.2d 834, 842 (Minn. App. 1995), *review denied* (Minn. June 14, 1995). In situations

4

"[w]here expert witnesses offer conflicting opinions, it is for the jury, as the ultimate trier of fact, to consider their qualifications and determine the weight to be given their opinions." *McKay's Family Dodge v. Hardrives, Inc.*, 480 N.W.2d 141, 146 (Minn. App. 1992) (quotation omitted), *review denied* (Minn. Mar. 26, 1992).

The district court's order denying Swanson's motion for JMOL is supported by the record. The district court reasoned, and the record reflects, that both Dr. Szalapski and Dr. Bruer testified that Dr. Hartleben achieved a good alignment of the right femur at the time of surgery based on the imaging studies and fluoroscopic images[5] they reviewed. Dr. Szalapski explained that the leg length looked good, and the screws were almost perfectly parallel.

Dr. Szalapski reviewed Swanson's imaging studies taken from August to November 2009 while Swanson was under respondents' care. He opined that her bone was healing nicely, and there was good alignment based on the "degree of parallelness of the screws" and stated that not much had changed during that time. Similarly, Dr. Bruer agreed that she could not see any signs of malrotation in the studies from August to November 2009.

Additionally, Dr. Szalapski compared the x-rays from November 2009 to March 2010, and opined that there was a major change based on the position of the tip of the rod in comparison to the staples. The change, according to Dr. Szalapski, occurred because

---

[5] According to trial testimony, "fluoroscopic images" are enhanced images produced from a camera used during a surgical procedure to assess alignment and hardware placement, and are saved for radiographic interpretation.

the bone shortened up, gradually turned, and cut around the screws, causing the fibula to go behind the tibia, which resulted in a "major change in the rotation of the knee." Dr. Bruer also opined that the location of the distal fixation screw and the intermedial nail had both changed based on the images she viewed from November 2009 to March 2010.

Furthermore, Dr. Szalapski described Swanson as a patient with "limited mobility" whose "care was complicated by the fact that she has extremely poor bone quality . . . [and] by the presence of hardware from previous surgeries." Likewise, Dr. Bruer opined that the hardware did not fail, the change in Swanson's bone was due to subsidence, which happens when bone is soft and the hardware moves in relation to the bone. And Dr. Szalapski opined that Swanson's malrotation was due to weak bones that could not hold the hardware. "And just with normal muscle forces and normal weight bearing, [the bone] gradually failed. . . . [T]he screws stay[ed] in the same place, but . . . [cut] through the osteoporotic bone which allows the bone to move and because [it is] a spiral fracture that results in malrotation."

Swanson's experts opined that a fluoroscopic image or x-ray was insufficient to view a bone in a malrotated position and Dr. Mechrefe opined that Swanson was malrotated at the time of surgery. But we must "view the evidence in the light most favorable to the prevailing party." *Bahr*, 766 N.W.2d at 919.

The jury weighed and considered the credibility of each witness, and implicitly found respondents' witnesses credible by accepting their testimony. *Id.* Therefore, the evidence supports the jury's verdict that Dr. Hartleben was not negligent and did not fixate Swanson's femur in a malrotated position.

6

**B.      Swanson's standard-of-care arguments are waived.**

Swanson argues that Dr. Hartleben failed to meet the applicable standard of care with regard to both of her legs.  But she failed to brief or provide legal support for these issues, and issues not briefed on appeal are waived.  *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982).

**II.     Swanson is not entitled to a new trial based on the alleged trial errors.[6]**

Under Minn. R. Civ. P. 59.01(a):

> A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:
> . . . .
> Irregularity in the proceedings of the court, referee, jury, or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial.

We review a district court's decision on a motion for a new trial under an abuse-of-discretion standard.  *Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 476-77 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006).  The principal concern in deciding to grant a new trial is whether there is prejudice.  *Id*. Appellate courts "will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict."  *Navarre v. S. Wash. Cty. Sch.*, 652 N.W.2d 9, 21 (Minn. 2002) (quotations omitted).

**A.      The district court did not abuse its discretion by denying Swanson's motion for a new trial based on respondents' experts' testimony.**

---

[6] Swanson fails to specify that she is requesting a new trial based on the alleged trial errors.  Swanson does not refute that this is her argument in her reply brief and seems to argue this generally in her brief and in a header in her reply brief.

8

The "determination of whether harm was done or whether there was genuine surprise which left defendants in a position where they could not have a fair trial must be left to the sound discretion of the trial court." *Sroga v. Lund*, 259 Minn. 269, 273, 106 N.W.2d 913, 915-16 (1961).

Swanson makes several arguments that she is entitled to a new trial because respondents' experts testified regarding new and undisclosed theories and opinions. We address each argument in turn.

### 1. The scout image[7]

Swanson argues that respondents improperly compared a CT scout image to the March 3, 2010, AP x-ray image (anterior-posterior or front-to-back view). The district court found that the scout image was available to all of the experts, Swanson did not object to respondents' experts' testimony regarding the scout image, and determined that Swanson was not prejudiced by the testimony. Because Swanson never objected to the testimony at trial, Swanson cannot now claim surprise, and the record supports the district court's findings and determination to deny Swanson a new trial. *Swanson v. Williams*, 303 Minn. 433, 435, 228 N.W.2d 860, 862 (1975) (noting that "[t]he trial court acted well within its discretion in denying plaintiff's motion for a new trial on the ground of surprise").

---

[7] According to trial testimony, a "scout image" is a preliminary diagnostic image used to line up and preview the CT image.

## 2. Testimony regarding the movement of the screws

Swanson contends that respondents' experts argued for the first time at trial that the distal locking screws moved shortly after fixation causing the bone to rotate without leaving a trace of their movement. But Swanson failed to raise this argument in her motion for new trial and therefore has waived it. *Iverson v. Iverson*, 432 N.W.2d 492, 493 (Minn. App. 1988) ("On appeal from the denial of a motion for a new trial, only those matters specifically alleged in the motion to constitute error may be reviewed."), *review denied* (Minn. July 27, 1989).

## 3. Dr. Szalapski's testimony regarding a change in rotation in the knee

Swanson argues that Dr. Szalapski's new testimony regarding the location of Swanson's fibula was based upon an improper comparison of different views. Swanson cites to *Longbehn v. Schoenrock*, 727 N.W.2d 153, 159 (Minn. App. 2007) for the proposition that this comparison led the jury to a "strained interpretation of the evidence." But that case is inapposite because *Longbehn* is a defamation per se case appealing a jury's award of damages. *Id.* Swanson failed to object to Dr. Szalapski's testimony at trial, cannot claim surprise, and as such has waived this argument on motion for new trial or on appeal. *Poppler v. O'Connor*, 306 Minn. 539, 541 n.1, 235 N.W.2d 617, 619 n.1 (1975); *Swanson*, 303 Minn. at 435, 228 N.W.2d at 862.

## 4. Dr. Szalapski's trial testimony regarding trigonometry proof of malrotation and lucency

Swanson apparently argues that she was prejudiced by Dr. Szalapski's testimony regarding trigonometry proof of malrotation and lucency because the arguments lacked

10

foundation, and while the testimony was stricken, the jury believed that Swanson was hiding valuable information. But Swanson provides no caselaw in support of either argument. Mere assertions of error not supported by argument or authority cannot be considered on appeal except where prejudice is obvious. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). Because Swanson did not adequately provide legal support for her arguments related to Dr. Szalapski's testimony, she has waived these arguments.

**B.      The district court did not abuse its discretion in denying Swanson's motion for a new trial based on respondents' trial counsel's closing argument.**

Swanson argues that she is entitled to a new trial because, during closing argument, respondents argued an inaccurate and improper burden of proof suitable for criminal cases and improperly discussed Dr. Biebl's "expert testimony."

"A trial court's response to improper remarks in closing argument is governed by no fixed rules but rests almost wholly in [its] discretion . . . ." *Poston v. Colestock*, 540 N.W.2d 92, 93 (Minn. App. 1995) (quotation omitted) (alteration in original), *review denied* (Minn. Jan. 25, 1996). Moreover, "[m]isconduct of counsel does not warrant a new trial unless the misconduct clearly resulted in prejudice to the losing party." *Eklund v. Lund*, 301 Minn. 359, 362, 222 N.W.2d 348, 350 (1974).

The district court determined that Swanson's argument was without merit and respondents' explanation to the jury regarding the burden of proof, by a preponderance of the evidence, was consistent with the court's instruction. It also found that Swanson did not object to respondents' closing and cannot prove prejudice. The district court further

11

found that Dr. Biebl's deposition testimony was properly in evidence because it was read to the jury, and as such, respondents' counsel could reference that testimony during closing argument.

Here, respondents explained that in a civil case the burden of proof is a preponderance of the evidence. Respondents further explained that the burden was "to prove something more probably true than not true." Then, respondents illustrated to the jurors that a preponderance of the evidence was not the same as tipping a scale so they were no longer equal or even, but a preponderance was more comparable to rolling a boulder from the bottom to the top of a hill. Respondents' explanation was generally consistent with the district court's jury instruction and with the weight of authority. *See Netzer v. N. Pac. Ry. Co.*, 238 Minn. 416, 425, 57 N.W.2d 247, 253 (1953) (noting that jury's instruction "to establish a fact by a fair preponderance of the evidence, the evidence must satisfy you that it is more reasonable, more probable, more credible that such fact exists than that the contrary exists" was appropriate). Moreover, viewing respondents' closing as a whole it did not misconstrue the burden of proof to the extent required to constitute reversible error. *See Swanson v. Thill*, 277 Minn. 122, 127-28, 152 N.W.2d 85, 89 (1967).

Respondents generally referred to the care that Dr. Biebl provided for Swanson. Swanson also discussed the services that Dr. Biebl provided in her closing and objected to respondents' reference to Dr. Biebl. But "parties are permitted to argue reasonable inferences from the facts presented at trial." *State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006) (quotation omitted).

12

Moreover, the district court gave a curative instruction to the jury clarifying that statements made by attorneys are not evidence, including those made during closing statements, and stated that the jury heard and understood the curative instruction. It is within the district court's broad discretion to give a curative instruction based on improper remarks made during closing argument and its issuance of curative instructions should be upheld except when the misconduct leads to "a miscarriage of justice." *Poston*, 540 N.W.2d at 93-94 (quotation omitted). Because the record supports the district court's decisions to give a curative instruction and that respondents' counsel did not commit misconduct during closing argument, the district court did not abuse its discretion by not granting a new trial. *Id.*

**C.** **The district court did not abuse its discretion by denying Swanson's motion for a new trial based on the totality of the circumstances.**

Swanson argues that she was denied a fair trial based on the totality of the circumstances. We are not persuaded.

An appellant is granted a new trial only in cases where the errors are "substantial and prejudicial." *State v. Boykin*, 285 Minn. 276, 282, 172 N.W.2d 754, 758 (1969). However, where the individual errors are not substantial or prejudicial, there cannot be a cumulative prejudice. *Id.*

The district court implicitly concluded that, based on the totality of the circumstances, Swanson was given a fair trial. The district court denied Swanson's motion concluding that, after several days of testimony, the jury had heard and fully considered the testimony and evidence of Swanson's injuries, but that Swanson had "not

13

established that she is entitled to judgment as a matter of law or that a new trial is necessary."

Swanson raises many alleged errors, but cannot prove individual or cumulative prejudice. *See id.* As such, the evidence supports the district court's decision and it did not abuse its discretion by denying Swanson's motion for a new trial.

**Affirmed.**